UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

FREDY RENAN NAJERA MONTOYA,

Defendant.

S1 15 Cr. 378 (PGG)

## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
## MOTION FOR RULE 15 DEPOSITIONS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Emil J. Bove III
Matthew J. Laroche
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 2

   I. The Defendant's Drug-Trafficking Activities ........................................................ 2

   II. The Attempted Murder of the Defendant and the Murder of
   Claudio Rigoberto  Méndez and Others ...................................................................... 4

   III. The Defendant's Motion ...................................................................................... 5

APPLICABLE LAW ....................................................................................................... 6

DISCUSSION .................................................................................................................. 9

   I. The Defendant Has Not Established That the Witnesses Are Unavailable ............ 9

   II. The Proffered Testimony Is Not Material Under Rule 15 ................................... 11

      A. Testimony Regarding the Defendant's Status as a Honduran Congressman ................ 11

      B. Testimony Regarding Efforts to Alter Honduran Extradition Policy ............................ 12

      C. Testimony Regarding the Violent Nature of the *Cachiros* ................................. 13

      D. Testimony Regarding the Attempted Murder of the Defendant ...................................... 14

      E. Testimony Regarding the Murder of Claudio Rigoberto Méndez ................................ 15

   III. Countervailing Considerations Weigh Against Granting Rule 15 Depositions ................ 16

CONCLUSION ............................................................................................................... 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>FREDY RENAN NAJERA MONTOYA,<br><br>Defendant. | S1 15 Cr. 378 (PGG) |

The Government respectfully submits this memorandum of law in opposition to the defendant's motion, pursuant to Rule 15 of the Federal Rules of Criminal Procedure, to depose four Honduran nationals in Honduras (Dkt. No. 20 ("Def. Mem.")).

Under Rule 15, a defendant bears the burden of demonstrating that "exceptional circumstances" exist and that taking depositions would be "in the interests of justice." To do so, the defendant must establish that (i) the proposed witnesses are unavailable, (ii) the proffered testimony is material, *i.e.*, highly relevant to a central issue in the case and to some extent exculpatory, and (iii) countervailing considerations do not outweigh any merit associated with the motion. The defendant has failed to meet his burden on each requirement.

First, it is not clear that defense counsel has even been in contact with each of the four witnesses, and counsel offers only vague and conclusory assertions regarding their availability to testify at trial. The defense has also declined to provide basic identifying information to the Government that would facilitate efforts to assist the witnesses in obtaining travel authorizations so that they could travel to the District and testify at the trial.

Second, the defendant has not provided the Court with sufficient information to determine if the deposition testimony he seeks to elicit would be material. The details provided strongly

1

suggest that the sought-after depositions would not yield material information because the testimony would be either cumulative of other evidence, inadmissible, or not supportive of any viable defense theory.

Third, countervailing considerations further support denying the motion. Because Honduras will not extradite its citizens to the United States for purposes of a perjury prosecution, a key incentive for truth telling and reliability would be absent from the depositions. Moreover, although the Government is unaware of an instance in which a Honduran national was deposed abroad in connection with a U.S. criminal case, depositions in Honduras relating to U.S. civil cases are typically conducted by a Honduran judge on the basis of written questions from the parties. Inquiries to the Honduran Supreme Court and Honduran Public Ministry suggest that the same would be true in this case. It is therefore not clear that even defense counsel, much less the Government, would be permitted to put questions to the witnesses, which would further hinder fact-finding and cross-examination. Finally, though not dispositive, safety considerations related to Honduras generally, and this investigation specifically, also weigh against permitting the defendant to pursue the depositions. Accordingly, the defendant's motion should be denied.

## BACKGROUND

### I.   The Defendant's Drug-Trafficking Activities

Honduras is one of the principal transshipment points in the world for cocaine that is produced in South America and imported into the United States. Beginning in at least 2004, multiple drug-trafficking organizations operating in Honduras worked in concert with politicians, law enforcement officials, and military personnel to receive large shipments of cocaine sent to Honduras from Venezuela and Colombia via air and maritime routes, and to transport the drugs

2

westward in Honduras toward the border with Guatemala and eventually through Mexico to the United States.

The defendant focuses in his motion on a single "violent Honduran drug trafficking organization," or "DTO," which appears to be a reference to the group that was known as the *Cachiros* and led by, among others, cooperating witness Devis Leonel Rivera Maradiaga.  (Def. Mem. 2).  Rivera Maradiaga is expected to testify at trial regarding drug-trafficking activities involving the defendant, but the *Cachiros* is not the only drug-trafficking group the defendant assisted.  Rather, the Government will establish at trial that the defendant engaged in drug-trafficking activities and related weapons offenses with a variety of significant traffickers in Honduras, Guatemala, and Mexico over a long period, including while he acted as a Honduran congressman representing the Olancho Department.  Although some of these traffickers structured their relationships in ways resembling formal organizations, the defendant played a role akin to that of a broker and sought to enrich himself through a variety of drug-trafficking conduct by leveraging his political power, authority, and access.

In addition to the *Cachiros*, for example, the defendant worked with Fabio Porfirio Lobo—who is the son of a former President of Honduras—and a high-ranking member of Mexico's Sinaloa Cartel to help receive drug shipments at a major commercial shipping hub in Puerto Cortés, Honduras.[1]  The defendant also worked with one or more associates of now-detained Mexican

---

[1] Lobo pleaded guilty to participating in a cocaine-importation conspiracy in May 2016.  *See United States v. Lobo*, No. 15 Cr. 174 (LGS).  In September 2017, Judge Schofield sentenced Lobo principally to 288 months' imprisonment, a $50,000 fine, and $266,667 in forfeiture.

kingpin Joaquin Archivaldo Guzman Loera, a/k/a "El Chapo" ("Chapo") to transport cocaine within Honduras so that it could be imported into the United States by the Sinaloa Cartel.[2]

In approximately early 2014, months after the U.S. Department of the Treasury, Office of Foreign Assets Control had publicly designated the *Cachiros* pursuant to the Foreign Narcotics Kingpin Act and imposed financial sanctions on Rivera Maradiaga, the defendant met in Honduras with, among others, Rivera Maradiaga, Honduran congressman Midence Oquelí Martínez Turcios, and Juan Ramon Matta-Waldurraga.[3]  During the meeting, which Rivera Maradiaga captured on video, the defendant and others in the group spoke at length about strategies for pursuing favorable treatment for drug traffickers by the Honduran government.

## II.   The Attempted Murder of the Defendant and the Murder of Claudio Rigoberto Méndez and Others

The murder referenced in the defendant's motion appears to be the killing in Honduras of Claudio Rigoberto Méndez.  (*See* Def. Mem. 2-3).  Specifically, in approximately October 2012, Méndez and others were murdered during a shootout in the Olancho Department of Honduras, where the defendant was a congressman.[4]  The defendant was subsequently charged with one or

---

[2] (*See* Mem. of Law in Support of Pretrial Detention at 2, *United States v. Guzman Loera*, No. 09 Cr. 466 (E.D.N.Y. Jan. 20, 2017) (dkt. no. 17) (characterizing Chapo as "the principal leader of the Mexico-based international drug trafficking organization known as the Sinaloa Cartel, which is the world's largest and most prolific drug trafficking organization")).

[3] Martínez Turcios is charged with drug-trafficking and weapons offenses similar to those included in the Indictment in this case, and is believed to be in Honduras.  *See United States v. Martínez Turcios*, No. 18 Cr. 499 (LAK).  In January 2018, Matta Waldurraga pleaded guilty to participating in a cocaine-importation conspiracy.  *See United States v. Matta Waldurraga*, No. 14 Cr. 442 (E.D.N.Y.).

[4] The information set forth herein related to the Honduran prosecution of the defendant is based on summary translations of Spanish-language news articles published in Honduras.

more violations of Honduran law in connection with the murders.  Following a trial in Honduras, the defendant was not convicted.  On appeal, however, the Supreme Court of Honduras ordered a new trial.  The retrial in Honduras has not yet taken place, and it is the Government's understanding that one or more charges against the defendant remain pending.

Rivera Maradiaga has acknowledged that, prior to the murder of Méndez, he participated in efforts have the defendant killed and caused the murders of four of the defendant's bodyguards.[5] In approximately October 2012, (i) Rivera Maradiaga was informed by a relative ("Relative-1") that the defendant and others were seeking to kill Relative-1, (ii) Rivera Maradiaga directed an associate to hire an assassin to assist Relative-1 in retaliating against the defendant, (iii) Rivera Maradiaga was told that the hired assassin led an attack against the defendant that resulted in the defendant being wounded, (iv) Rivera Maradiaga was later told that the defendant and others caused an attack against Relative-1 and his associates, which led to the murder of Méndez and others, and (v) in connection with a truce involving the defendant and other drug traffickers, Rivera Maradiaga persuaded Relative-1 not to testify or provide evidence against the defendant relating to these incidents.

## III.  The Defendant's Motion

The defendant seeks to depose four "potential" defense witnesses who reside in Honduras: Rigoberto Mendez Paz, Angel Danery Cardona Castro, Leonardo Martinez Rivera, and Balbina

---

[5] Rivera Maradiaga's cooperation agreement reflects the murders of the defendant's bodyguards and the attempted murder of the defendant.  (Ex. A at 10 (items 63-66), 11 (item 11)).  The cooperation agreement was filed publicly in connection with the testimony of Rivera Maradiaga during a *Fatico* hearing before Judge Schofield related to the sentencing of Fabio Lobo.  *See* note 1, *supra*.

Pacheco (collectively, the "Witnesses").  (Def. Mem. 2-3).  Counsel asserts that, "[a]fter numerous conversations with the four . . . witnesses," he has determined that they "are unable and unwilling to travel to the United States to testify on the defendant's behalf" because "each one does not have travel documents and cannot afford to secure those documents nor do they had the funds to appear."  (*Id.* 2, 3).

The defendant indicates that the Witnesses would testify regarding five topics.  It appears that the defendant seeks to offer testimony from "each one of these witnesses" relating to the following:

> Topic 1: Defendant Was a Honduran congressman.  "[T]he defendant, during the relevant period of the conspiracy, was a member of the National Congress of Honduras";
>
> Topic 2: Honduran Extradition Policy.  A drug-trafficking organization the defendant refers to as the "DTO"—presumably, the *Cachiros*—displayed a "desire to have politicians in Honduras abolish the recently passed extradition treaty"; and
>
> Topic 3: *Cachiros* Violence.  "Coconspirators and potential government witnesses in the case were employed by a violent Honduran [DTO]," and "this group directed" violence "at the defendant," including "attempts on the defendant's life."

(*Id.* 2).  In addition, the defendant asserts that:

> Topic 4: Attempted Murder of Defendant.  Rivera and Pacheco would "testify regarding an October 2012 attempt of the defendant's life by the DTO which left the defendant seriously wounded," and more specifically, "that they were present at a meeting that was held between government witnesses and others in which the attempt on the defendant's life was planned"; and
>
> Topic 5: Méndez Murder.  Paz and Castro were eyewitnesses to the murder of Méndez and would testify that the defendant was not present at the shooting.

(*Id.* 2-3).

## APPLICABLE LAW

Rule 15 permits a court to grant a party's motion for a pretrial deposition in a criminal case only "because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P.

15(a)(1).  The Rule requires that such a "deposition must be taken and filed in the same manner as

a deposition in a civil action" and that the "scope and manner of the deposition examination and

cross-examination must be the same as would be allowed during trial."  *Id.* 15(e).  As a result,

"more than one court has observed that 'foreign depositions are suspect and, consequently, not

favored.'"  *United States v. Oudovenko*, No. 00 Cr. 1014, 2001 WL 253027, at *3 (E.D.N.Y. Mar.

7, 2001) (quoting *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993)).  "This is due, in

part, to the use of different procedures related to, *inter alia*, the oath, the translation process, and

the opportunity for cross-examination."  *Id.*; *see also United States v. Salim*, 855 F.2d 944, 950

(2d Cir. 1988) (expressing "considerable concern about the possible abuses of foreign methods of

examining witnesses"); *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988) ("Foreign

deposition testimony, because of the absence of a sanction for perjury, is suspect.").

The party seeking a Rule 15 deposition bears the burden of demonstrating that "exceptional

circumstances" exist.  *E.g.*, *United States v. Vilar*, 568 F. Supp. 2d 429, 437 (S.D.N.Y. 2008).

Specifically, the movant "'must show that (1) the prospective witness is unavailable for trial,

(2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of

justice.'"  *Id.* (quoting *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001)).

With respect to witness availability, the movant must establish that he made a "good-faith

effort to produce the person to testify at trial."  *United States v. Johnpoll*, 739 F.2d 702, 709 (2d

Cir. 1984).  "[S]pecific reasons" must be provided to establish unavailability; "'[c]onclusory

statements of unavailability . . . are insufficient."  *United States v. Pham*, No. 12 Cr. 423, 2015

WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2014) (quoting *United States v. Chusid*, No. 00 Cr. 263,

2000 WL 1449873, at *1 (S.D.N.Y. Sept. 27, 2000)).

Evidence is "material" for purposes of Rule 15 "if it is 'highly relevant to a central issue in the case . . . .'" *United States v. Grossman*, No. 03 Cr. 1156, 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005) (quoting *Drogoul*, 1 F.3d at 1556); *see also United States v. Abu Ghayth*, No. 98 Cr. 1023, 2014 WL 144653, at *2 (S.D.N.Y. Jan. 15, 2014) (reasoning that proposed Rule 15 testimony "should be more than merely relevant"). This requires "some showing, beyond unsubstantiated speculation, that the evidence exculpates the defendant." *United States v. Kelley*, 36 F.3d 1118, 1125 (2d Cir. 1994) (internal quotation marks omitted); *see also United States v. Merritt*, No. 90 Cr. 767, 1991 WL 79235, at *5 (S.D.N.Y. May 7, 1991) (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory"). And even if the sought-after evidence is material, "a court may properly deny the motion if the proposed testimony would be cumulative or consists of hearsay." *Id.* (citing *United States v. Dunseath*, No. 98 Cr. 493, 1999 WL 165703, at *1 (S.D.N.Y. Mar. 25, 1999) and *United States v. Campbell*, No. 91 Cr. 1219, 1998 WL 564376, at *1 (E.D.N.Y. June 30, 1998)); *see also Abu Ghayth*, 2014 WL 144653, at *2 ("[T]he proposed testimony must be admissible and non-cumulative of other evidence.").

Finally, "[t]he 'failure of justice' element is met if the other two elements are met and there are no other countervailing factors." *United States v. Epskamp*, No. 12 Cr. 120, 2013 WL 12175097, at *2 (S.D.N.Y. Oct. 3, 2013); *accord Vilar*, 568 F. Supp. 2d at 442 (reasoning that courts must also consider "'substantial countervailing factors militating against the taking of the deposition'" (quoting *Grossman*, 2005 WL 486735, at *3)). "Such countervailing factors would include," among other things, (i) "undue expense to the non-moving party and significant delays in trying the matter," *United States v. Al Kassar*, No. 07 Cr. 354, 2008 WL 4735269, at *2

8

(S.D.N.Y. Oct. 27, 2008); (ii) "whether the safety of United States officials would be compromised by going to the foreign location," *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000); and (iii) "the likelihood that the procured testimony will be admissible at trial," *United States v. Jefferson*, 594 F. Supp. 2d 655, 655 (E.D. Va. 2009).

## DISCUSSION

The defendant has not met his burden of demonstrating unavailability of the Witnesses, or the materiality of their testimony, and countervailing considerations support denying the motion.

## I.  The Defendant Has Not Established That the Witnesses Are Unavailable

Referring to the Witnesses as "potential," only, defense counsel claims that he determined—"[a]fter numerous conversations" with them—that the Witnesses are unavailable because "each one" lacks "travel documents" as well as sufficient financial resources "to secure those documents" and "to appear" in this District to testify at trial.  (Def. Mem. 2, 3).  On August 18, 2018, in an effort to facilitate the defendant's efforts to procure the proffered testimony, the Government requested from counsel the Witnesses' dates of birth and any Honduran passport numbers in order to make inquiries with the State Department and the Drug Enforcement Administration ("DEA") regarding whether visas or other immigration relief could be obtained that would permit the Witnesses to attend the trial.[6]  Counsel has not provided any of that information.  Instead, counsel expressed concerns regarding whether the Witnesses would be

---

[6] *See Epskamp*, 2013 WL 12175097, at *2 (explaining that court would "reconsider its decision" granting a Rule 15 deposition "if the government can somehow ensure [witness's] presence at trial"); *see also United States v. Yousef*, No. 08 Cr. 1213, 2012 WL 691325, at *2 (S.D.N.Y. Mar. 5, 2012) ("If the Government is able to liaison with the Honduran authorities to arrange something in the nature of a single entry visa and/or law enforcement escort for [witness] to travel to the United States, then the Rule 15 motion becomes moot.").

willing to travel to New York near the December holidays and who would bear the costs of their travel.   During a subsequent conversation on August 22, counsel clarified that he had communicated with some but not all of the Witnesses regarding these issues.

Counsel cannot establish that the Witnesses are unavailable under Rule 15 based on this record.   "[A] defendant's mere allegation that there is reason to believe that a foreign witness would not attend trial in the United States is an insufficient basis upon which to require the taking of the witness' deposition."   *United States v. Merrit*, No. 90 Cr. 767, 1991 WL 79235, at *4 (S.D.N.Y. May 7, 1991).   As in *Merritt*, counsel "[has] not demonstrated that they even contacted the potential deponents."   *Id.*   "Conclusory statements of unavailability by counsel" submitted via "unsworn statement[s] . . . in a memorandum of law" are insufficient.   *United States v. Chusid*, No. 00 Cr. 263, 2000 WL 1449873, at *1 (S.D.N.Y. Sept. 27, 2000); *see also United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962) (affirming denial of Rule 15 motion where, *inter alia*, defense filings contained only conclusory allegations regarding witness availability); *United States v. Figueroa*, No. 95 Cr. 823, 1996 WL 68529, *1 (E.D.N.Y.  Feb. 11, 1996) (denying motion pursuant to Rule 15 where, *inter alia*, defense failed to submit an "affidavit from the witness in question" regarding "the reasons for his alleged unavailability to appear here"); *United States v. Varbaro*, 597 F. Supp. 1173, 1181 (S.D.N.Y. 1984) (reasoning that "[u]nfounded speculation is not enough" to establish unavailability), *rejected on other grounds by United States v. Riccardelli*, 794 F.2d 829, 834 (2d Cir. 1986).   The defendant also has not demonstrated that the Witnesses or anyone else made efforts to obtain necessary travel documents, and counsel has declined to offer basic information that is necessary for the Government to provide assistance.   *See Pham*, 2015 WL 7871348, at *2 (witness unavailable where, after she "discovered her visa revocation," she "went

to the United States Embassy in London" and "consulted an immigration attorney"). In addition, the Court set the trial schedule in this case based in part on the parties' estimation that the proceedings would *not* interfere with the December 2018 holiday season, and it typically takes less than a day to travel on commercial flights between the United States and Honduras. Thus, counsel's concern that the trial will be conducted near holidays is not sufficient to establish unavailability.

The defendant also has retained counsel in this case, and has not provided any explanation for why he will not or cannot pay the Witnesses' expenses in connection with the trial testimony. If the defendant is unable to cover these expenses, at least one court in this District has directed that a foreign witness's travel expenses be reimbursed pursuant to Title 28, United States Code, Section 1821. *United States v. Yousef*, No. 08 Cr. 1213 (Dkt. No. 69). For all of these reasons, the defendant has not established that the Witnesses are unavailable.

## II.   The Proffered Testimony Is Not Material Under Rule 15

The defendant's description of the anticipated testimony from the Witnesses is, in most respects, fatally vague. *See Vilar*, 568 F. Supp. 2d at 442 (denying Rule 15 motion where movant "broadly asserts that this anticipated testimony is likely to concern" material issues but "failed to describe with any particularity" the connection between the subject of the anticipated testimony and "any of the crimes alleged in the indictment"). The defendant's summaries also demonstrate that none of the Witnesses' five topics of anticipated testimony is material under Rule 15.

### A.   Testimony Regarding the Defendant's Status as a Honduran Congressman

Multiple trial witnesses will explain that the defendant "was a member of the National Congress of Honduras during the relevant time period." (Def. Mem. 1-2). His political position

11

is not at all exculpatory.[7]  Rather, the Government will establish at trial that the defendant abused power and authority derived from his position as a congressman in furtherance of his drug-trafficking activities.

### B.  Testimony Regarding Efforts to Alter Honduran Extradition Policy

Although the defendant refers to a "recently passed extradition treaty," the extradition treaty between the United States and Honduras has been in force since 1912.  *See* Treaty for the Extradition of Fugitives from Justice, U.S.-Hond., Jan. 15, 1909, 37 Stat. 1616; Supplementary Extradition Convention, U.S.-Hond., Feb. 21, 1927, 45 Stat. 2489 (attached as Ex. B).  Article 102 of the Honduran constitution, however, prohibited the extradition of Honduran citizens to foreign countries until approximately January 2012.  At that time, Honduras amended Article 102 to permit the extradition of Honduran citizens in cases involving "crimes of trafficking of narcotics in any of their forms, terrorism and any other illegal act of organized crime and when there exists a Treaty or Convention of extradition with the requesting country."  (*See* Ex. C at 22 (translation of Honduran constitution as of 2013)).  Pursuant to that constitutional amendment, Honduras began to extradite Honduran citizens to the United States to face prosecution for drug-trafficking charges.

It is not clear from the defendant's submission why testimony from the Witnesses relating to "desire" by unspecified members of "the DTO" to avoid extradition, including by seeking to persuade "politicians in Honduras to abolish" the amendment to Article 102, would be admissible.

---

[7] *See United States v. Al Fawwaz*, No. 98 Cr. 1023, 2014 WL 627083, *4 (S.D.N.Y. Feb. 18, 2014) ("Testimony that [witness] was aware of legitimate, non-criminal activities of [an organization affiliated with defendant] and unaware of any criminal activities in which the [organization] or [defendant] participated is not exculpatory absent some reason to believe that [the witness] would or should have known both the organization's facial or public nature and, to the extent it had one, its secret nature. [The defendant] has proffered no such reason.").

12

*See* Fed. R. Evid. 608, 613, 801; *see also, e.g.*, *United States v. Purdy*, 144 F.3d 241, 245-46 (2d Cir. 1998) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded."). Such testimony would certainly not "challenge central aspects of the government's allegations." *Grossman*, 2005 WL 486735, at *4; *see also United States v. Ismaili*, 828 F.2d 153, 161 (3d Cir. 1987) (testimony sought via Rule 15 motion should "negate the crux" of the government's case). As noted above, the defendant participated in a videotaped meeting during 2014 with Rivera Maradiaga, Martínez Turcios, and Matta-Waldurraga, in which they discussed potential strategies for achieving favorable treatment from the Honduran government. The Government expects to offer the recording of the meeting at trial during its case-in-chief, and to elicit testimony from Rivera Maradiaga, among others, regarding the circumstances under which the meeting occurred. In light of the defendant's participation in efforts to obtain favorable treatment for drug traffickers from the Honduran government, the proffered testimony from the Witnesses would be, if anything, inculpatory. Therefore, testimony from the Witnesses regarding Honduran extradition policy is not material under Rule 15.

### C.   Testimony Regarding the Violent Nature of the *Cachiros*

The fact that "[c]oconspirators" and "potential government witnesses" were "employed by a violent Honduran drug trafficking organization" is cumulative of anticipated testimony from Government witnesses. (Def. Mem. 2). The Government's anticipated cooperating witnesses—including but not limited to one or more members of the *Cachiros*—have pleaded guilty to drug-related charges and will be available at trial for reasonable cross-examination regarding these topics. For example, Rivera Maradiaga will testify regarding the "violent nature" of the *Cachiros*. (Def. Mem. 2). His cooperation agreement includes admissions relating to 78 murders and 15

attempted murders.  (*See* Ex. A at 9-11).  Therefore, even if the Witnesses could offer admissible testimony relating to violence by cooperating witnesses—and the defendant has not established that they can—the testimony would be cumulative of other evidence and is therefore not material.

### D.   Testimony Regarding the Attempted Murder of the Defendant

The defendant also seeks to establish through the Witnesses that the *Cachiros* "directed" violence against the defendant, including "attempt[s] on [his] life."  (Def. Mem. 2).  But Rivera Maradiaga has already admitted to directing this violence in connection with his guilty plea, and his cooperation agreement states explicitly that he caused the murders of four of the defendant's bodyguards and attempted to have the defendant killed.  (*See* Ex. A at 10 (items 63-66), 11 (item 11)).  The defendant continued to engage in drug trafficking following these incidents.  He also participated in the 2014 meeting with Rivera Maradiaga, and the video does not reflect any expressions of fear by the defendant or concerns about his safety.  Thus, the defendant's participating in drug-trafficking activities with Rivera Maradiaga and others, notwithstanding their violence, while simultaneously purporting to serve Honduras as a congressman, will be one of the core themes of the Government's case-in-chief.

In addition to being cumulative and not exculpatory, the defendant has not explained how testimony from the Witnesses relating to violence by the *Cachiros* or efforts by Rivera Maradiaga to murder him would be admissible.  For example, in light of the prolonged nature of the defendant's participation in the charged conspiracies, the violence of drug traffickers testifying as cooperating witnesses is not probative of a duress defense.  *See, e.g.*, *United States v. Caban*, 173 F.3d 89, 94 (2d Cir. 1999) (holding that defendant not entitled to a duress instruction where "[h]e had several opportunities to end his involvement in the conspiracy and warn the police, but he did

not do so"). The defendant has also not established that any of the Witnesses has a non-hearsay basis to testify regarding violence by any Government witness, including any observations by Rivera and Pacheco of statements by others at "a meeting that was held between government witnesses and others in which the attempt on the defendant's life was planned." (Def. Mem. 3).[8] Similar to the more general topic of the violent nature of the *Cachiros*, it is also unclear that testimony from the Witnesses—*i.e.*, extrinsic evidence—would be admissible to impeach any Government witness. *See Purdy*, 144 F.3d at 245-46.

### E.   Testimony Regarding the Murder of Claudio Rigoberto Méndez

The defendant is not charged in the United States with the murder of Claudio Rigoberto Méndez, and the Government does not intend to offer testimony at trial relating to Méndez's murder unless the defendant opens the door to it through argument or cross-examination. Moreover, the Government does not believe that the murder of Méndez was conducted "in furtherance of the conspirac[ies]" charged in the Indictment. (Def. Mem. 2). Thus, the defendant's presence or absence at the scene of Méndez's murder is not material to the charges.

At trial, the Government anticipates that Rivera Maradiaga will acknowledge his role in the attempted murder of the defendant and the murders of the defendant's bodyguards. Rivera Maradiaga should also be permitted to explain that he helped cause this violence against the defendant as retaliation for an attack on Relative-1 that Rivera Maradiaga believed—but did not

---

[8] It appears that Rivera and Pacheco would have a non-frivolous basis for invoking the Fifth Amendment privilege against self-incrimination with respect to their participation in this meeting. The Government also understands, based on consultation with a Legal Advisor to the DEA's Tegucigalpa Country Office, that Honduran nationals have access to a similar privilege under Article 88 of the Honduran constitution. (*See* Ex. C at 20).

15

know—the defendant helped to cause.  The Government will not elicit testimony at trial, however, regarding the retaliatory attack against Relative-1 by the defendant and others that led to the murder of Méndez.  Moreover, unless new evidence is identified, the Government does not intend to argue at any point in these proceedings, including at any sentencing of the defendant should he be convicted, that the defendant was present at the scene where Méndez was murdered.  Accordingly, testimony from Méndez's son and Castro that the defendant was not in the "immediate area where the murder was committed" is not material under Rule 15.

## III.    Countervailing Considerations Weigh Against Granting Rule 15 Depositions

In addition to the fact that the defendant has not met his burden of establishing unavailability and materiality, countervailing considerations support denying his motion. Specifically, as explained below, (i) the Government could not pursue a perjury sanction against the Witnesses in Honduras because the Honduran constitution bars the extradition of Honduran citizens to face such a charge, (ii) the defendant has not provided any information demonstrating that depositions would be conducted in a timely fashion, lead to reliable testimony, and be admissible at trial, and (iii) though not a dispositive consideration, conducting depositions related to this case in Honduras would pose safety risks for, among others, the prosecution team.

First, the Witnesses' testimony, if taken via Rule 15 depositions in Honduras, would "essentially be free of any penalty of perjury, calling into doubt the reliability of any of the potential testimony."  *United States v. Buck*, 271 F. Supp. 3d 619, 624 (S.D.N.Y. 2017) ); *see also Alvarez*, 837 F.2d at 1029.  While the extradition treaty between the United States and Honduras contemplates extraditions for charges relating to "[p]erjury or subornation of perjury," the Honduran constitution prohibits the extradition of Honduran citizens, as noted above, except in

16

cases involving "trafficking of narcotics in any of their forms, terrorism and any other illegal act of organized crime." (Ex. B at 4 ¶ 19; Ex. C at 22, art. 102). As a result, Honduras would not extradite the Witnesses to the Unted States to face perjury charges if they lied in the requested depositions. "Without the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital. Thus, the strongest indicator of the reliability of a witness' testimony—the oath— is effectively absent here." *United States v. Banki*, No. 10 Cr. 08, 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010). The absence of a viable perjury sanction provides yet another reason for denying the defendant's motion.

Second, compounding concerns about the reliability of the testimony the defendant seeks to adduce, he has not shown that depositions of the Witnesses in Honduras could be conducted "in the same manner as a deposition in a civil action." Fed. R. Crim. P. 15(e). Indeed, other than submitting a proposed order to the Court that would direct that "the Depositions will be held in the United States Embassy in Tegucigalpa, Honduras at a date and time agreed upon by the parties herein," the defendant's motion papers are virtually silent on this issue. Because the Court lacks jurisdiction to compel the Honduras-based Witnesses to appear, the defendant would be required to seek assistance from Honduras in order to depose them.

> Honduras is not a party to any international convention or treaty on service of documents or obtaining evidence to which the United States is also a party. Judicial assistance is governed generally by the Vienna Convention on Consular Relations to which the United States and Honduras are parties.

(Ex. D (guidance on Letters Rogatory from U.S. Embassy Tegucigalpa, Honduras)). "Depositions of non-U.S. citizens or depositions of unwilling witnesses must be taken pursuant to Letters Rogatory requesting the assistance of local judicial authorities." (Ex. E (guidance on depositions

from U.S. Embassy Tegucigalpa, Honduras)).  The State Department advises that Letters Rogatory "typically take from 6 months to a year to execute."  (Ex. D).

At the request of the Government, a Legal Advisor to the DEA's Tegucigalpa Country Office, who served previously as a prosecutor in Honduras, made inquiries relating to the defendant's motion to the *Ministerio Público de Honduras* (Honduran Public Ministry) and *Corte Suprema de Justicia de Honduras* (Honduran Supreme Court).  Through those inquiries, the Legal Advisor was unable to identify a prior instance in which depositions were conducted in Honduras by or on behalf of a criminal defendant in the United States.  The Legal Advisor confirmed to the Government that the only way for a private actor such as the defendant to depose Honduran citizens in Honduras would be to use the Letters Rogatory process, and that usually—in prior civil cases— the Honduran Supreme Court appoints a judge to preside over the deposition.[9]  According to the Legal Advisor, the Honduran judge typically solicits written questions from the parties and puts those questions to the witness, and, depending on the judge, the parties might be permitted to question the witness directly.  "The ineffective oath, coupled with the lack of opportunity for in-person cross-examination and observation [by the jury], makes it extremely difficult to assess the reliability of the proposed witnesses' testimony."  *Banki*, 2010 WL 1063453, at *3; *see also*

---

[9] Although Honduras has in the past responded to requests for legal assistance from the United States pursuant to, for example, the multilateral treaty titled "United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances," Dec. 19, 1988, 28 I.L.M. 493, private actors such as the defendant are not parties to the agreements that serve as the basis for those requests between foreign sovereigns and therefore may not rely on them when seeking legal assistance from Honduras. *E.g.*, *Carbajal v. United States*, No. 99 Civ. 1916, 2004 WL 2283658, at *7 (S.D.N.Y. Oct. 8, 2004) ("Because the Convention is not self-executing, but depends instead on the enactment of laws in signatory nations to give it effect, it creates no individual rights."); *see also United States v. Suarez*, 791 F.3d 363, 366-67 (2d Cir. 2015).

*Drogoul*, 1 F.3d at 1555 ("The court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial.").   The defendant's failure to investigate the conditions under which the requested depositions could be conducted, and information from the Honduran government suggesting, at minimum, uncertainty regarding whether the Witnesses could be cross-examined in a manner that would generate admissible testimony in this District, counsel further against granting the motion.

Third, country conditions in Honduras raise security concerns for the prosecution team, among others, that support denying the motion—particularly in light of the fact that the defendant has not met his burden of establishing other critical elements.  *See Olafson*, 213 F.3d at 442 (affirming denial of Rule 15 motion where, *inter alia*, the district court "explicitly noted that conditions in Mexico were unsafe for American prosecutors").   In January 2018, the State Department issued a travel advisory for Honduras at Level 3, on a four-level scale, directing U.S. citizens to "Reconsider Travel."  (Ex. F).[10]  In support of the travel advisory, the State Department warned, for example:

> Violent crime, such as homicide and armed robbery, is common. Violent gang activity, such as extortion, violent street crime, rape, and narcotics and human trafficking, is widespread.  Local police and emergency services lack the resources to respond effectively to serious crime.

(*Id.*).  The State Department's Bureau of Diplomatic Security advised, as recently as April 2018, that "[t]he U.S. Department of State has assessed Tegucigalpa as being a CRITICAL-threat location for crime directed at or affecting official U.S. government interests." (Ex. G).  Moreover,

---

[10] The highest State Department travel advisory, Level 4, instructs:  "Do Not Travel."

"[s]ince 2010, Honduras has had one of the highest murder rates in the world," including 52 murders of U.S. citizens.  (*Id.*).  "In 2017 and through January 2018, there were six murder cases of U.S. citizens."  (*Id.*).

The dangerous security situation in Honduras poses greater concerns for the prosecution team, which is conducting a years-long ongoing investigation of politically-connected drug trafficking in the country.  The investigation has resulted in convictions of violent drug traffickers, the son of a former Honduran President (Fabio Lobo), seven former members of the *La Policía Nacional de Honduras* (the Honduran National Police), a former Honduran congressman, and a former cabinet official to the current Honduran President.[11]  In addition to the charges against the defendant, charges are pending in the District against, among others, former Honduran congressman Martínez Turcios and a former Mayor of Yoro, Honduras.[12]  And at least one cooperating witness in the investigation, Carlos Amilcar Leva Cabrera, a/k/a "Sentado," was murdered in 2015.  *See United States v. Campo Flores*, No. 15 Cr. 765 (PAC),  2017 WL 1133430, at *3 (S.D.N.Y. Mar. 24, 2017); *see also* Nolle Prosequi, *United States v. Leva Cabrera*, No. 14 Cr. 664 (PGG) (Dkt. No. 14).  In light of the sensitive nature of the public targets of the ongoing investigation, some of whom are violent, it would pose particularly acute safety concerns for the prosecution team to travel to Honduras to participate in depositions of the Witnesses.  While

---

[11] The seven members of *La Policía Nacional de Honduras* were convicted in No. 15 Cr. 174 (LGS).  The former congressman, Yani Benjamin Rosenthal Hidalgo, and former cabinet official (who also served in the Honduran congress), Yankel Rosenthal Coello, were convicted of money laundering charges in *United States v. Rosenthal*, No. 13 Cr. 413 (JGK).

[12] As noted above, Martínez Turcios is charged in No. 18 Cr. 499 (LAK).  *See* note 3, *supra*.  The former Mayor, Arnaldo Urbina Soto, is charged in No. 18 Cr. 497 (DLC).

security issues will not in the typical case warrant denying a motion pursuant to Rule 15, the Government respectfully submits that the concerns here are another consideration that supports denying the motion in light of the defendant's failure to meet his burden on other elements.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to depose four witnesses in Honduras, pursuant to Rule 15, should be denied.

Dated: New York, New York
      August 27, 2018

                            Respectfully submitted,

                            GEOFFREY S. BERMAN
                            United States Attorney
                            Southern District of New York

By:      /s/_____
                            Emil J. Bove III
                            Matthew J. Laroche
                            Assistant United States Attorneys

Cc:     Defense Counsel
        (Via ECF)