

U.S. Department of Justice

ORIGINAL

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

April 7, 2016

By Email
Rene A. Sotorrio
2937 SW 27th Avenue
Suite 202
Coconut Grove, Florida 33133
Email: renesotorrio@yahoo.com

      Re:    **United States v. Devis Leonel Rivera Maradiaga,**
              **S3 13 Cr. 413 (JGK)**

Dear Mr. Sotorrio:

      On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Devis Leonel Rivera Maradiaga (the "defendant") to the enclosed five-count Superseding Information, S3 13 Cr. 413 (JGK) (the "Information").

      Count One of the Information charges the defendant with acting as one of the principal administrators, organizers, and leaders of a continuing criminal enterprise (the "Continuing Criminal Enterprise"), from in or about 2003 up to and including in or about 2013, in violation of Title 21, United States Code, Sections 848(a), 848(b), and 848(c). Count One carries a mandatory term of life imprisonment; a maximum term of supervised release of five years; a maximum fine, pursuant to Title 21, United States Code, Section 848(a), and Title 18, United States Code, Section 3571, of the greatest of $2,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

      Count Two of the Information charges the defendant with, while engaging in and working in furtherance of the Continuing Criminal Enterprise as well as the cocaine importation conspiracy charged in Count Three of the Information, intentionally killing, and counseling, commanding, inducing, procuring, and causing intentional killings, from in or about 2003 up to and including in or about 2013, in violation of Title 21, United States Code, Sections 848(a), 848(b), 848(c), and 848(e)(1)(A). Count Two carries a maximum term of life imprisonment; a mandatory minimum term of 20 years' imprisonment; a maximum term of supervised release of

five years; a maximum fine, pursuant to Title 21, United States Code, Section 848(a), and Title 18, United States Code, Section 3571, of the greatest of $2,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

Count Three of the Information charges the defendant with participating in a conspiracy, from in or about 2003 up to and including in or about 2013, to import five kilograms and more of cocaine into the United States, and to manufacture and distribute five kilograms and more of cocaine, knowing and intending that it would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 963, 952(a), 959(a), 959(c), 960(a)(1), 960(a)(3), and 960(b)(1)(B). Count Three carries a maximum term of life imprisonment; a mandatory minimum term of 10 years' imprisonment; a maximum term of supervised release of life; a mandatory minimum term of five years' supervised release; a maximum fine, pursuant to Title 21, United States Code, Section 960(b)(1)(B), and Title 18, United States Code, Section 3571, of the greatest of $10,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

Count Four of the Information charges the defendant with participating in a conspiracy, from in or about 2004, up to and including in or about 2013, to commit money laundering, in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i), Section 1956(a)(1)(B)(i), 1956(a)(2)(A), 1956(a)(2)(B)(i), and 1957. Count Four carries a maximum term of imprisonment of 20 years; a maximum term of three years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 1956(a)(1) and 1956(a)(2), of the greatest of $500,000, or twice the value of the property involved in the transaction, or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer; and a mandatory $100 special assessment.

Count Five of the Information charges the defendant with carrying and using machineguns and destructive devices, from at least in or about 2003, up to and including in or about 2013, during and in relation to, and possessing machineguns and destructive devices in furtherance of, the drug trafficking offenses charged in Counts One, Two, and Three of the Information, in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), and 2. Count Five carries a maximum term of imprisonment of life; a mandatory minimum term of 30 years' imprisonment, which must run consecutively to any other sentence; a maximum term of five years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

The total maximum sentence of incarceration for Counts One through Five is life imprisonment.

      It is further understood that the defendant shall make restitution in an amount to be specified by the Court in accordance with Title 18, United States Code, Sections 3663, 3663A, and 3664. This amount shall be paid according to a plan established by the Court.

      The defendant furthermore admits the forfeiture allegations in the Information and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, Title 18, United States Code, Sections 982(a)(1) and 924(d), and Title 28, United States Code, Section 2461(c), any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the offenses charged in the Information—including, with respect to Count Five, all firearms and ammunition involved and used in the commission of the offense—and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of such offenses. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

      It is understood that the defendant: (a) shall truthfully and completely disclose all information with respect to the activities of himself and others concerning all matters about which this Office inquires of him, which information can be used for any purpose; (b) shall cooperate fully with this Office, the Drug Enforcement Administration, and any other law enforcement agency designated by this Office; (c) shall attend all meetings at which this Office requests his presence; (d) shall provide to this Office, upon request, any document, record, or other tangible evidence relating to matters about which this Office or any designated law enforcement agency inquires of him; (e) shall truthfully testify before the grand jury and at any trial and other court proceeding with respect to any matters about which this Office may request his testimony; (f) shall bring to this Office's attention all crimes which he has committed, and all administrative, civil, or criminal proceedings, investigations, or prosecutions in which he has been or is a subject, target, party, or witness; and (g) shall commit no further crimes whatsoever. Moreover, any assistance the defendant may provide to federal criminal investigators shall be pursuant to the specific instructions and control of this Office and designated investigators.

      It is understood that this Office cannot, and does not, agree not to prosecute the defendant for criminal tax violations, if any. However, if the defendant fully complies with the understandings specified in this Agreement, no testimony or other information given by him (or any other information directly or indirectly derived therefrom) will be used against him in any criminal tax prosecution. Moreover, if the defendant fully complies with the understandings specified in this Agreement, he will not be further prosecuted criminally by this Office for any crimes, except for criminal tax violations, related to his participation in: (i) a Continuing Criminal Enterprise involving the manufacture, importation, and distribution of cocaine, from in or about 2003 up to and including in or about 2013, as charged in Count One of the Information; (ii) intentionally killing, and counseling, commanding, inducing, procuring, and causing intentional killings, from in or about 2003 up to and including in or about 2013, while engaging in and working in furtherance of the Continuing Criminal Enterprise described abovein (i) and

the cocaine importation conspiracy described below in (iii), which resulted in the killing of the approximately 78 people identified in Appendix A and the wounding of at least approximately the 15 people identified in Appendix B, as charged in Count Two of the Information; (iii) a conspiracy to import cocaine into the United States, and to manufacture and distribute cocaine, knowing and intending that it would be unlawfully imported into the United States, from in or about 2003 up to and including in or about 2013, as charged in Count Three of the Information; (iv) a conspiracy to commit money laundering, from in or about 2004 up to and including in or about 2013, as charged in Count Four of the Information; (v) the carrying and use of machineguns and destructive devices during and in relation to, and possession of machineguns and destructive devices in furtherance of, the drug trafficking activities described above in (i) through (iii), from in or about 2003 up to and including in or about 2013, as charged in Count Five of the Information; (vi) the payment of bribes to government, military, and law enforcement officials in Honduras in order to facilitate the drug trafficking activities described above in (i) through (iii), from in or about 2003 up to and including in or about 2013, which is conduct that is part of the basis for the charges in Counts One, Two, and Three of the Information; (vii) communications with a Honduran drug trafficker regarding a potential law enforcement source, in or about September 2014, which appear to have resulted in the murder of four people at the direction of that drug trafficker; (viii) illegally entering the United States, in or about 1998, prosecution of which is barred by the applicable statute of limitations; and (ix) personal use of cocaine and marijuana in Honduras, over which there is no federal jurisdiction, to the extent that he has disclosed such participation to this Office as of the date of this Agreement. This Agreement does not provide any protection against prosecution for any crimes except as set forth above, including for acts of violence.

It is understood that all of the conduct set forth in subsections (vi) through (ix) of the preceding paragraph constitutes either relevant conduct, pursuant to United States Sentencing Guidelines ("U.S.S.G.") Section 1B1.3, or other conduct of the defendant, pursuant to U.S.S.G. § 1B1.4, that the Court may consider at the time of sentencing.

It is understood that the defendant's truthful cooperation with this Office is likely to reveal activities of individuals who might use violence, force, and intimidation against the defendant, his family, and loved ones. Should the defendant's cooperation present a significant risk of physical harm, this Office, upon the written request of the defendant, will take steps that it determines to be reasonable and necessary to attempt to ensure his safety and that of his family and loved ones. These steps may include application to the Witness Security Program of the United States Marshals Service, whereby the defendant, his family, and loved ones, if approved, could be relocated under a new identity. It is understood, however, that the Witness Security Program is under the direction and control of the United States Marshal's Service and of the Office of Enforcement Operations of the Department of Justice, not of this Office.

It is understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office. This Office will, however, bring the cooperation of the defendant to the attention of other prosecuting offices, if requested by him. Nor does this

Rene A. Sotorrio  
April 7, 2016

Agreement bind the Bureau of Immigration and Customs Enforcement ("ICE"), although this Office will bring the cooperation of the defendant to the attention of ICE, if requested by him.

It is understood that the sentence to be imposed upon the defendant is within the sole discretion of the Court. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive, and will not recommend any specific sentence to the Court. However, this Office will inform the Probation Office and the Court of: (a) this Agreement; (b) the nature and extent of the defendant's activities with respect to this case and all other activities of the defendant which this Office deems relevant to sentencing; and (c) the nature and extent of the defendant's cooperation with this Office. In so doing, this Office may use any information it deems relevant, including information provided by the defendant both prior to and subsequent to the signing of this Agreement. In addition, if this Office determines that the defendant has provided substantial assistance in an investigation or prosecution, and if he has fully complied with the understandings specified in this Agreement, this Office will file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(e), requesting the Court to sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5). It is understood that, even if such a motion is filed, the sentence to be imposed on the defendant remains within the sole discretion of the Court. Moreover, nothing in this Agreement limits this Office's right to present any facts and make any arguments relevant to sentencing to the Probation Office and the Court, or to take any position on post-sentencing motions. The defendant hereby consents to such adjournments of his sentence as may be requested by this Office.

It is understood that, should this Office determine either that the defendant has not provided substantial assistance in an investigation or prosecution, or that the defendant has violated any provision of this Agreement, such a determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(e), but will not entitle the defendant to withdraw his guilty plea once it has been entered.

It is understood that, should this Office determine, subsequent to the filing of a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and/or 18 U.S.C. §3553(e), that the defendant has violated any provision of this Agreement, this Office shall have the right to withdraw such motion.

It is understood that, should the defendant commit any further crimes or should it be determined that he has given false, incomplete, or misleading testimony or information, or should he otherwise violate any provision of this Agreement, the defendant shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including perjury and obstruction of justice. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. It is the intent of this

Rene A. Sotorrio                                                                                                           Page 6
April 7, 2016

Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is understood that in the event that it is determined that the defendant has committed any further crimes, given false, incomplete, or misleading testimony or information, or otherwise violated any provision of this Agreement, (a) all statements made by the defendant to this Office or other designated law enforcement agents, and any testimony given by the defendant before a grand jury or other tribunal, whether prior to or subsequent to the signing of this Agreement, and any leads from such statements or testimony shall be admissible in evidence in any criminal proceeding brought against the defendant; and (b) the defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is the intent of this Agreement to waive all rights in the foregoing respects.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences. The defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including deportation) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty plea and conviction.

       This Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

PREET BHARARA
United States Attorney

By: _____
Emil J. Bove III
Matthew J. Laroche
Michael D. Lockard
Assistant United States Attorneys
(212) 637-2444

APPROVED:

_____
Daniel L. Stein
Chief, Criminal Division

AGREED AND CONSENTED TO:

_____          4/14/16
Devis Leonel Rivera Maradiaga      Date

APPROVED:

_____          4/14/16
Rene A. Sotorrio                   Date
Attorney for the defendant

Appendix A

| | Approx. Date | Victim | Location (if known) |
|---|---|---|---|
| 1. | Oct. 2003 | FNU LNU-1, a security guard at a hospital occupied by Jorge Anibal Echeverria-Ramos, a/k/a "Coqui" | San Pedro Sula, Honduras |
| 2. | Mar. 2004 | Jorge Anibal Echeverria-Ramos, a/k/a "Coqui" | Tegucigalpa, Honduras |
| 3. | 2004 | FNU Ramos, a/k/a "Cui" | Colon Department, Honduras |
| 4. | 2004 | FNU Ramos, a/k/a "Flaco" | Colon Department, Honduras |
| 5. | 2004 or 2005 | FNU Ramo, a/k/a "Cayito" | Colon Department, Honduras |
| 6. | 2005 or 2006 | Edwin Salvador | |
| 7. | 2005 or 2006 | FNU LNU, a/k/a "Champa" | |
| 8. | 2005 or 2006 | Alex Velasquez | |
| 9. | 2005 or 2006 | FNU LNU-2, a daughter of Tonio Velasquez | |
| 10. | May 2006 | Juan Ramon Salgado | San Pedro Sula, Honduras |
| 11. | May 2008 | Salvador Regalado | San Pedro Sula, Honduras |
| 12. | May 2008 | Carlos Ramirez | San Pedro Sula, Honduras |
| 13. | May 2008 | Hernan Paz | San Pedro Sula, Honduras |
| 14. | May 2008 | Jesus Orellana | San Pedro Sula, Honduras |
| 15. | May 2008 | Santos Blandin | San Pedro Sula, Honduras |
| 16. | 2009 | Ismael Landaverde | San Pedro Sula, Honduras |
| 17. | 2009 | FNU LNU, a/k/a "Modesto" | |
| 18. | 2009 or 2010 | FNU LNU, a/k/a "Orli," a/k/a "Orlin" | Colon Department, Honduras |
| 19. | Dec. 2009 | Julian Aristides Gonzalez | Tegucigalpa, Honduras |
| 20. | 2010 | FNU LNU-3, an assassin believed to have worked for the Echeverria-Ramos family | |
| 21. | 2010 | FNU Cardona | |
| 22. | 2010 | FNU LNU, a/k/a "Mantequilla," a/k/a "Whitebread" | Colon Department, Honduras |
| 23. | Mar. 2010 | Nahum Palacios | Colon Department, Honduras |
| 24. | Mar. 2010 | Yorleny Zanchez | Colon Department, Honduras |
| 25. | Apr. 2010 | Juan Osorto, a/k/a "Héctor A. Portillo," a/k/a "Juan Zorro," a/k/a "El Gato Negro" | Tegucigalpa, Honduras |
| 26. | Apr. 2010 | FNU LNU-5, a suspected bodyguard for Juan Osorto | Tegucigalpa, Honduras |
| 27. | Apr. 2010 | FNU LNU-6, a suspected bodyguard for Juan Osorto | Tegucigalpa, Honduras |
| 28. | Apr. 2010 | FNU LNU-7, a suspected bodyguard for Juan Osorto | Tegucigalpa, Honduras |

## Appendix A

| | Approx. Date | Victim | Location (if known) |
|---|---|---|---|
| 29. | Apr. 2010 | FNU LNU-8, a suspected bodyguard for Juan Osorto | Tegucigalpa, Honduras |
| 30. | Apr. 2010 | FNU LNU-9, a suspected bodyguard for Juan Osorto | Tegucigalpa, Honduras |
| 31. | Apr. 2010 | FNU LNU-10, a suspected bodyguard for Juan Osorto | Tegucigalpa, Honduras |
| 32. | 2010 or 2011 | Ramón Antonio Ponce Romero, a/k/a "Moncho Cabesas" | |
| 33. | 2010 or 2011 | FNU LNU-11, an associate of Ramón Antonio Ponce Romero | |
| 34. | 2010 or 2011 | FNU LNU-12, an associate of Ramón Antonio Ponce Romero | |
| 35. | 2011 | FNU LNU-13, a suspected member of the "Los Pelludos" gang | |
| 36. | May 2011 | FNU LNU, a/k/a "Taqui" | |
| 37. | June 2011 | José Geovany Recinos Padilla, a/k/a "Yuba Recinos" | Colon Department, Honduras |
| 38. | June 2011 | Ana Yarixza Escobar Bonilla | Colon Department, Honduras |
| 39. | June 2011 | Melvin Andrade | Colon Department, Honduras |
| 40. | June 2011 | Allan Gutierrez | Colon Department, Honduras |
| 41. | Summer 2011 | FNU LNU-14, the suspected murderer of Carlos Maradiaga | Colon Department, Honduras |
| 42. | Oct. 2011 | FNU LNU-15, the cousin of "El Sapo" | San Pedro Sula, Honduras |
| 43. | Oct. 2011 | FNU LNU-16, a suspected member of Los Grillos gang | San Pedro Sula, Honduras |
| 44. | Oct. 2011 | FNU LNU-17, a suspected member of Los Grillos gang | San Pedro Sula, Honduras |
| 45. | Oct. 2011 | FNU LNU-18, a suspected member of Los Grillos gang | San Pedro Sula, Honduras |
| 46. | Oct. 2011 | FNU LNU-19, a suspected member of Los Grillos gang | San Pedro Sula, Honduras |
| 47. | Oct. 2011 | FNU LNU-20, a suspected member of Los Grillos gang | San Pedro Sula, Honduras |
| 48. | Nov. 2011 | Judith Aleman Banegas | Tegucigalpa, Honduras |
| 49. | Nov. 2011 | Angel Henriquez | Tegucigalpa, Honduras |
| 50. | Nov. 2011 | Karol Guardado | Tegucigalpa, Honduras |
| 51. | Dec. 2011 | Alfredo Landaverde | Tegucigalpa, Honduras |
| 52. | 2011 or 2012 | FNU LNU-22, a suspected murderer | Colon Department, Honduras |
| 53. | 2011 or 2012 | FNU LNU-23, a suspected murderer | Colon Department, Honduras |
| 54. | 2011 or 2012 | FNU LNU, a/k/a "Javier Caballero" | |
| 55. | 2011 or 2012 | FNU LNU, a/k/a "Leonel" | |

Appendix A

| | Approx. Date | Victim | Location (if known) |
|---|---|---|---|
| 56. | 2011 or 2012 | Betio Torres | Colon Department, Honduras |
| 57. | 2012 | FNU LNU-24, a suspected rapist | Colon Department, Honduras |
| 58. | 2012 | FNU LNU-25, a suspected rapist | Colon Department, Honduras |
| 59. | 2012 | FNU LNU-26, a suspected criminal | Colon Department, Honduras |
| 60. | 2012 | FNU LNU-27, a suspected criminal | Colon Department, Honduras |
| 61. | 2012 | FNU LNU-28, a suspected criminal | Colon Department, Honduras |
| 62. | 2012 | FNU LNU-29, a suspected criminal | Colon Department, Honduras |
| 63. | Oct. 2012 | FNU LNU-30, a suspected bodyguard for Fredy Renan Najera-Montoya | Olancho Department, Honduras |
| 64. | Oct. 2012 | FNU LNU-31, a suspected bodyguard for Fredy Renan Najera-Montoya | Olancho Department, Honduras |
| 65. | Oct. 2012 | FNU LNU-32, a suspected bodyguard for Fredy Renan Najera-Montoya | Olancho Department, Honduras |
| 66. | Oct. 2012 | FNU LNU-33, a suspected bodyguard for Fredy Renan Najera-Montoya | Olancho Department, Honduras |
| 67. | Late 2012 | FNU LNU-34, an associate of Jorge Anibal Echeverria-Ramos, a/k/a "Coqui" | |
| 68. | 2012 or 2013 | FNU LNU, a/k/a "El Chino" | Tegucigalpa, Honduras |
| 69. | 2012 or 2013 | Mario Munoz | Colon Department, Honduras |
| 70. | 2012 or 2013 | FNU LNU, a/k/a "Pollo Rey" | Colon Department, Honduras |
| 71. | 2012 or 2013 | FNU LNU-35, a suspected participant in a robbery of Wilter Blanco | Colon Department, Honduras |
| 72. | 2012 or 2013 | FNU LNU, a/k/a "Raffa" | |
| 73. | June 2013 | Miriam Yolanda Canales Ramos | Colon Department, Honduras |
| 74. | July 2013 | Anibal Barrow | San Pedro Sula, Honduras |
| 75. | Oct. 2013 | Melvin Sandres, a/k/a "Metro" | |
| 76. | Nov. 2013 | FNU LNU-37, an associate of Melvin Sandres | |
| 77. | Nov. 2013 | FNU LNU-38, a political rival of Wendy Caballero | San Pedro Sula, Honduras |
| 78. | Nov. 2013 | Sonia Marlen Ramos-Montes | Quebec, Canada |

3

**Appendix B**

|     | Approx. Date  | Victim                                                                                                          | Location (if known)             |
|-----|---------------|-----------------------------------------------------------------------------------------------------------------|---------------------------------|
| 1.  | Oct. 2003     | Jorge Anibal Echeverria-Ramos, a/k/a "Coqui"                                                                    | San Pedro Sula, Honduras        |
| 2.  | Oct. 2003     | Margarita Lobo                                                                                                  | San Pedro Sula, Honduras        |
| 3.  | Feb. 2004     | Jorge Anibal Echeverria-Ramos, a/k/a "Coqui"                                                                    | Costa Rica                      |
| 4.  | 2005 or 2006  | Tonio Velasquez                                                                                                 |                                 |
| 5.  | 2005 or 2006  | FNU Velasquez, a/k/a/ "Cruz"                                                                                    |                                 |
| 6.  | 2010          | FNU LNU-4, believed to be Byron Ruiz                                                                            | Olancho Department, Honduras    |
| 7.  | Oct. 2011     | FNU LNU, a/k/a "El Sapo"                                                                                        | San Pedro Sula, Honduras        |
| 8.  | Late 2011     | FNU LNU-21, a policeman from Ceiba, Honduras                                                                    | Atlantida Department, Honduras  |
| 9.  | 2011 or 2012  | Miguel Valle Valle                                                                                              | Colon Department, Honduras      |
| 10. | 2011 or 2012  | FNU LNU, a/k/a "Lencho"                                                                                         | Colon Department, Honduras      |
| 11. | Oct. 2012     | Fredy Renan Najera-Montoya                                                                                      | Olancho Department, Honduras    |
| 12. | 2012 or 2013  | Juan Carlos Villalobos Quiroz, a/k/a "Victor Javier Francis," a/k/a "Misco," a/k/a "Muco"                       | Atlantida Department, Honduras  |
| 13. | 2012 or 2013  | FNU LNU-36, a Honduran policeman suspected of participating in the kidnapping and murder of Esvin Escalante     |                                 |
| 14. | 2013          | Julian Ramos                                                                                                    | Quebec, Canada                  |
| 15. | 2013          | FNU Rosendo, an attorney who represented Adan Montes                                                            |                                 |

1