UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                    CASE NO.: 15-CR-378

FREDY RENAN NAJERA MONTOYA,

    Defendant.
_____/

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION FOR WITNESS DEPOSITIONS

COMES NOW the Defendant FREDY RENAN NAJERA MONTOYA by and through his undersigned counsel and for his reply to the government's response (DE #23) to his motion to take foreign depositions pursuant to Rule 15 of the Federal Rules of Criminal Procedure and states as follows:

Once again, the defendant is currently charged by way of a superseding indictment with a total of three counts. In Count 1 the defendant is charged with conspiracy to import in excess of five (5) kilograms of cocaine which were sent to Honduras and to transport the drugs westward in Honduras toward the border with Guatemala and eventually to the United States. In Count 2 the defendant is charged with possession of machine guns and destructive devices. Finally, Count 3 the defendant is charged with conspiracy to possess machine guns and destructive devices.

The discovery provided so far shows as well as the statements contained within the second superseding indictment allege that Mr. Najera Montoya, a citizen of Honduras, was a member of the National Congress of Honduras during the relevant

time period of the conspiracy and the allegations of the government occurred while he was outside the United States, specifically in Honduras.

The government commences their reply by accusing the defense not even having been in contact with the four (4) witnesses that it proposes fall within the purview of Rule 15. This ridiculous allegation belies one of defense counsel's primary obligations, to wit, to ensure constitutionally effective assistance of counsel and providing a vigorous defense. Counsel for the government in their response seeming questions counsel's effort but wants the defendant to have a fair trial but only on their terms.

Counsel for the government is not and has not provided "identifying information" as to their witnesses but expects the defense to do so even where they are so obligated to as of this date. Once again, these witnesses do not and will not travel to the United States due to a well-founded fear of retribution and discrimination to themselves and their loved ones. The names of these witnesses have permeated the press in Honduras which is known to the government.

The primary witness against the defendant tried to kill him six (6) times and managed to wound him once. The government witness has admitted to 78 murders and numerous wounded or maimed people when the truth is he may be responsible for hundreds if not thousands of murders. The witnesses have personal knowledge of acts and conduct of the primary government witness. As a caveat, if counsel learns the identity og other government witnesses, a similar request for Rule 15 depositions will likely be forthcoming.

Finally, the government, without the benefit of the testimony of the respective defense witnesses and cross examination of those witnesses summarily concludes that "their testimony would be cumulative of other evidence, inadmissible, or not supportive of a viable defense theory." (DE #23-2) In other words, they wish that this court pass on the admissibility of what they cannot put forward while assuming what the theory of the defense actually is.

The government mistakenly suggests to this court that since the potential defense witnesses cannot be held responsible or exposed to a perjury prosecution if they make intentionally false statements during said depositions then the "key incentive of truth telling would be absent . . . " This statement is unabashedly untrue. If the court was to buy into this rhetoric then all Rule 15 depositions would be improper and therefore there would be no need for such a rule.

As with any and all testimony including a Rule 15 deposition, a witness is required to take an oath whereby they swear to tell the truth. Whether a witness is competent to testify, depends on the individual's ability to observe, to remember, to communicate, and to understand that the oath imposes a duty to tell the truth. *Tate ex rel. Tate v. Board of Education City of Peekskill*, 346 F. Supp. 2d 536 (S. D. N. Y. 2004) No such allegations have been made by the government that the oath imposes a duty to tell the truth.

## *MEMORANDUM OF LAW*

Once again, the Federal Rules of Criminal Procedure have provided for depositions of certain witnesses since 1975. That rule provides that a court may grant a motion to take a deposition on notice and "because of exceptional circumstances."

Fed. R. Crim. P. 15(a)(1). As amended in 2012, the rule requires that, if a deposition is to occur outside the United States and without the defendant's presence, the Court must make five case-specific findings: (1) the witness's testimony could provide substantial proof of a material fact; (2) there is a substantial likelihood that the witness's attendance at trial cannot be obtained; (3) a deposition of the witness in the United States cannot be obtained; (4) for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; and (5) the defendant can meaningfully participate in the deposition through reasonable means. *United States v. Mostafa*, 14 F. Supp. 3d 515 (S.D. N.Y. 2014)

Under Rule 15(a), a trial court may, in its discretion, order the deposition of a witness for use at trial "[w]henever due to exceptional circumstances of the case it is in the interests of justice." Fed. R. Crim. P. 15(a). A Movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice. *United States v. Cohen*, 260 Fed 3d 68, 78 (2nd Cir. 2001)

*Unavailability of the Witnesses*

In the defense motion for these Rule 15 deposition, the government is absolutely correct that the defendant referred to the witnesses as "potential." The reasoning behind this is simple and should not, in and of itself, cause denial of the motion. As the government is fond of saying all witnesses are potential witnesses until they actually testify. At this point of the case against Mr. Najera, there are no actual government witnesses but simply potential witnesses against the defendant. Such is the case here.

None of the four witnesses desire to come to the United States in that they fear for their personal safety and the safety of their families. Each of the witnesses are not required to file sworn declarations as to each and every detail but all have personally expressed their desire not to come to the United States but to testify truthfully as to their knowledge of the facts and circumstances of the allegations against the defendant.

The requirement of a sworn declaration was addressed by the court in *United States v. Villar*, 568 F. Supp. 2d 429 (S. D. N. Y. 2008) In *Villar* the government sought to depose four witnesses in the United Kingdom. The defense objected stating that the government failed to provide sworn declarations or affidavits from the witnesses as to their unavailability. The court, per Judge Sullivan, wrote that "as an initial matter, the Court rejects defendants' argument that the government must present affidavits from the proposed witnesses in order to establish their unavailability at trial." He went on to state "(r)ather, the Second Circuit has held that the government's representations regarding unavailability may be sufficient to satisfy Rule 15, at least where the government established its "good faith" efforts to obtain the witnesses' presence at trial by indicating that it had repeated contact with the witnesses and had promised "to pay all expenses of the witnesses" in traveling to the United States. *United States v. Sindona*, 636 F.2d 792, 804 (2nd Cir.1980). Similarly, the overwhelming majority of courts in this Circuit—and in other circuits—have rejected arguments that the movant must produce an affidavit from the proposed deponent in order to establish his or her unavailability. See *Villar*, supra at 439

Each has communicated to the undersigned their fear and unwillingness to do

so. If they wanted to appear, surely attempts would be made to secure their travel documents for the trial period currently scheduled for this case.

The expense to the defense and the defendant to take care of the travel expenses and assist in the obtaining of travel document is irrelevant in the case of a witness who is unwilling to travel.

In *Villar*, supra, the court found that where the government made a good faith effort to produce the witnesses to testify at trial but the witnesses are nevertheless unwilling to do so and the witnesses desire were communicated to government, unavailability was sufficiently proved to allow a Rule 15 deposition.

### *Countervailing Considerations*

In the Rule 15 motion, counsel for the defense proposes that the depositions be taken at the United States Embassy located in Tegucigalpa, Honduras at a date and time agreed upon by the parties. This offer is somehow repugnant to the government. The government incorrectly cites that the "defendant would be required to seek assistance from the Honduran government to depose them." (DE #23-17) Once again, the government seeks to impose an imaginary road block where one does not exist.

Obviously the court has no power to compel a witness to appear, however these witnesses have agreed to appear voluntarily and have all agreed that the United States Embassy is an acceptable venue for their depositions to be taken.

Finally, the government has expressed security concerns over this travel citing to a travel advisory of the United State Department of State. This State Department has not issued such a travel advisory for the country of Honduras. Nothing could be

further from the truth.

A review of the State Department's web site shows that the most recent travel advisory is dated January 10, 2018 and is for Gracias a Dios Department which is an area that is far from the capital of Tegucigalpa, Honduras where the depositions are being proposed. Therefore, the government's concerns as to their security in unfounded.

According to the United States Embassy's office in Tegucigalpa, Honduras official web site on August 8-14 the country was safe enough for the travel of the Morehouse College Glee Club which performed at three cities (not including the capital). Clearly with the security detail provided to federal prosecutors in a foreign country who desire to take the depositions of Honduran witnesses in the United States Embassy poses a low level risk that it pales in comparison to the Morehouse College Glee Club travelling through less secure areas with no such security. These alleged security concerns are wholly unfounded.

The defendant's right to a fair trial is paramount in the granting of these depositions and each prong of Rule 15 has been satisfied.

WHEREFORE, the Defendant FREDY RENAN NAJERA MONTOYA respectfully requests that this court grant the instant motion.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this document has been filed with the Clerk of Court using the CM/ECF Filing System on this 1st day of September 2018.

        LAW OFFICES OF VICTOR E. ROCHA, P.A.
        990 Biscayne Blvd, Suite O-903
        Miami, Florida 33132
        Tel: (305) 774-9111
        Fax: (305) 514-0987
        Email: rochalaw@gmail.com

        By: */s/ Victor E. Rocha, Esquire*
        VICTOR E. ROCHA, ESQUIRE
        **NEW YORK BAR NO.: VR9648**