# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
# CASE NO. 1:15-CR-378 PGR

**UNITED STATES OF AMERICA**
         *Plaintiff,*

-V.S.-

**FREDY RENAN NAJERA MONTOYA**
         *Defendant.*

_____/

## REPLY TO GOVERNMENT'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA

Respectfully submitted,

/s/ *Joaquin Perez*

_____
JOAQUIN PEREZ, ESQ.
6780 Coral Way
Miami, Florida 33155
Tel: (305) 261-4000
Fax: (305) 662-4067
NY. Bar No.: 5237532
Jplaw1@bellsouth.net

## TABLE OF CONTENTS

I.    INTRODUCTORY STATEMENT……………………………………………….…………..1

II.   GOVERNMENT'S REBUTTAL…………….....…………………………………………………4

III.  MR. NAJERA'S RIGHT UNDER THE SIXTH AMENDMENT……………………………5

IV. MOTION IS UNTIMELY……………………………………………………………….…..……6

V.  BREAKDOWN IN COMMUNICATION…………………………...………………………......…8

VI. ATTORNEY ROCHA'S ACTUAL CONFLICT……………………………………………10

    A. Chronology of Events……………………………………………………………….. 10

    B. Applicable Law……………………………………………………………………………..11

    C. Discussion…………………………………………………………………………… 12

VII. ATTORNEY ROCHA'S INVESTIGATION AND REVIEW OF THE 3500 MATERIAL..15

    A. Discussion……………………………………………………………………………………..15

VIII. CONCLUSION…………………………….……………………………………..…………..16

IX. THE INDIVIDUALS IMPLICATED IN THE ASSASSINATION…………………………17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO. 1:15-CR-378 PGR

UNITED STATES OF AMERICA
*Plaintiff*,

-V.S.-

FREDY RENAN NAJERA MONTOYA
*Defendant*.

_____/

## I.    INTRODUCTORY STATEMENT

The government relies on unfounded speculation as the basis for its contention that the Motion to Withdraw the Guilty Plea was untimely "as it was filed almost four months after the guilty plea, and approximately six weeks after the Government rebuffed *what appeared* to be a request from Mr. Perez to discuss potential cooperation by the defendant." (Gov. Opp. 1 14-17. The following is the email on which the government bases its irrelevant speculation to: [1]

> Mon 2/18/2019 7:08 PM
> Good evening Matt,
> I am planning to be in New York to visit with Mr. Najera this week and while there I was wondering if you will have some time to meet with me, preferably towards the end of the week.
> In reviewing the transcript of the December 7th and 10th hearings, I noticed there was some discussion about an Advice of Rights form (December 7, 2018 Hearing, page 6, line 19) which was apparently marked as Exhibit 1 during that hearing (Trans. 9:5-7).        *Continued on next page…..*

---

[1] The government makes a similar speculative claim by suggesting that "the undersigned appeared to continue those efforts even after the guilty plea through a February 2019 email requesting an in person meeting with the government.(Gov. Opp. Guilty 25 11-12)

1

> I have not been able to find that exhibit.  Are you aware whether Mr. Najera signed it and, if so, was it made an exhibit in connection with the change of plea that took place on December 10, 2018?
>
> I look forward to hearing from you.

In fact, Mr. Perez was attempting to share with the Government a report generated by the Honduran Department of Security dated July 13, 2013.  This report described the circumstances and individuals involved in General Gonzalez's assassination.   By its actions, the government rebuffed any attempt to review information that somehow negated its theory of the case.



(EXHIBIT A) – Spanish Report

(EXHIBIT B) – English Translated Report

2

THE FOLLOWING IS A TRANSLATION OF THE NATURE AND PURPOSE OF
THE INVESTIGATION AND REPORT GENERATED BY THE SPECIAL
INTELLIGENCE UNIT

---

Honduras                                                    National Main Office
National Police                                             of Preventive Police
                                                            National Director
                                                            Honduras, C.A.

Department of Security
General Command National Police
Strategic Directory D-2
Intelligence Command National Police

Tegucigalpa M.D.C.
July 29 of 2013
Document DGPN-DED2-DI-No. 1101-2009 SIR
National Police General Command
General Director
Salomon de Jesus Escoto Salinas
His Office

TECHNICAL INVESTIGATIVE INTELLIGENCE REPORT

By these means I address that authority for the purpose of transmitting the
technical report regarding the investigations conducted by the team of the Special
Intelligence Unit with respect to the assassination of the Director of the Fight Against
Drug Trafficking, General Julian Artistides Gonzalez Irias, said act having occurred
on Tuesday, the 8th of December of 2009, in the Guanacaste neighborhood of
Tegucigalpa, in the morning hours.

---

The government suggests that the Honduran government "had no reason to

open its case files to an ongoing investigation relating to General Gonzalez's

murder". (Gov. Opp. 51, 1-3) However, as more fully discussed below, the

content of this report undermines Leonel Rivera Maradiaga's credibility

regarding the cause, motives, and the identity of participants in the

assassination of General Gonzalez, and excludes defendant Najera as one of

the participants.   The government's objection to the relevance and

admissibility of the report suggests it is turning a "blind eye" towards evidence

3

that undermines its theory of the case.  The following is a reply to the Government's Motion in Opposition to Defendant's Motion to Vacate Plea. ("Gov. Opp." (Dkt. No. 98)).

## II.    <u>GOVERNMENT'S REBUTTAL</u>

The government's rebuttal can be summarized along the following lines.  First, that given the "overwhelming testimonial evidence of the five cooperating witnesses, there are no compelling reasons to withdraw the plea." (Gov. Opp. 23, L 24, 25: *Id*. At 43 L 19, 11). Second, too much time has elapsed between the guilty plea and the filing of the motion to withdraw. Third, the conflict between Attorney Rocha and Mr. Najera did not cause a lack of communication which prevented an adequate defense.   Fourth, Defendant's statements expressing dissatisfaction with Attorney Rocha should be ignored in that he made a "knowing and voluntary decision to plead guilty. Finally, Attorney Rocha's actual conflict due to his concurrent representation of Wilter Blanco and past representation of Ramon Matta Waldurraga has no impact on the quality of his performance.  Missing is the government's explanation of any steps taken to ascertain the truthfulness of Leonel Rivera Maradiaga's testimony.  Even when confronted with facts impugning Maradiaga's credibility, and in fact, pointing to the culpability of others, the government made no effort to seek the truth.

4

### III.   MR. NAJERA'S RIGHT UNDER THE SIXTH AMENDMENT TO THE CONSTITUTION

The government ignores the proper standard on a motion to withdraw a guilty plea.  When the motion to withdraw is timely, i.e. before sentencing, the right to withdraw the plea should be liberally construed in favor of the defendant. Fed. Rules Cr. Proc. Rule 11(d), 18 U.S.C.A. *U.S. v. Couto*, 311 F.3d 179 (2d Cir. 2002).

The issue therefore is whether there is a fair and just reason for Mr. Najera to withdraw his plea and go to trial.[2]  This is wholly independent of the weight of the evidence and goes to the essence of the defendant's right to exercise his right to a trial by jury. In making such a determination, the government's opinion as to what they refer to as the "overwhelming weight of the evidence" is irrelevant. (Gov. Opp. 23, 28, 43).  The decision to go to trial is to be made by the defendant in consultation with an un-conflicted, competent attorney.

The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right… to have the Assistance of Counsel for his defense. *Wheat v. United States*, 486 U.S. 153,

---

[2] In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. *U.S. Const.Amend.VI.*

158, 108 S. Ct. 1692, 100 L.Ed 2d 140 (1988) quoting *966 U.S. Const. amend.VI).  Ineffective assistance of counsel "during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005.)  Because of the breakdown in attorney-client communication, Mr. Najera was presented with a Hobson's choice.  As a result, he acceded to take a plea that he otherwise would have rejected.

Mr. Najera's position has always been that absent Attorney Rocha's deficient representation, he would have proceeded to trial. As a result of the plea, the defendant faces a minimum forty (40) years and potentially up to life imprisonment. Thus, this is not a situation where the plea contained the benefit of a reduced sentence. He would not have been subjected to a harsher sentence had he proceeded to trial and been convicted. See *Eisa v. ICE*, No. 08 Civ. 6204, 2008 WL 4223618, at *11 (S.D.N.Y. Sept. 11, 2008).

## IV.   **MOTION IS UNTIMELY**

The government argues that the motion filed was untimely. It mentions that the undersigned was insidiously involved, and "searching in vain for a way to delay an adjudication on the merits in this case so that he could try to

6

obtain a plea offer and/or another opportunity for the defendant to earn a cooperation agreement". (Gov. Opp. 25, 8-10). This is not accurate. Due to a breakdown in communication between Mr. Najera and Attorney Rocha, Mr. Najera and his family requested that the undersigned evaluate and advise defendant as to proceed to trial or plea. The undersigned was not a participant as defense counsel during that timeframe. The prosecutors were aware and never objected to the undersigned's attempt to mediate, and in fact, **encouraged it**. The undersigned had no further involvement in the case until he filed his Motion for Substitution on of counsel which was granted by the court in January 7, 2019. As shown by the attached November 18, 2018, text message at approximately 6:47 pm, Mr. Najera communicated his decision to go to trial to Attorney Rocha.



## V.   **BREAKDOWN IN COMMUNICATION**

The government completely ignores the genesis of the breakdown in communication problem.  On September 19, 2018, Attorney Rocha filed his motion to withdraw. On October 30, 2018, forty-one days before the trial date, the Court heard argument on the motion.  Attorney Rocha mentioned that Mr. Najera had

8

difficulties reviewing the discovery… and that he had been unable to do so because his access to the law library was restricted to once a week for forty five minutes.  In addition, Attorney Rocha specifically mentioned that this is **not only a dispute about money** but "I believe that we have **irreconcilable differences at this point which practically prevent me from providing effective assistance of counsel here**." (October 30, 2018, Tr. 4, 8-10).  (Emphasis Added.)  Based upon this colloquy, the Court was on notice that the conflict between defendant and attorney was so great that it resulted in a total lack of communication preventing an adequate defense.  At this point the court could have granted a continuance, or permitted counsel to be substituted by a public defender.  The subsequent period of forty-one days was insufficient time to prepare for a case the government spent five years investigating.  More significantly, all the allegations in the Indictment took place in Honduras.  While the government had access to witnesses who were in local jails and seeking leniency in exchange for their testimony, Mr. Najera had a very limited amount of time to mount a defense.

> In our system of justice, the Sixth Amendment's guarantee to assistance of counsel is paramount, insuring the fundamental human rights of life and liberty. "The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done." *Gideon v. Wainwright*, 372 U.S.335, 343, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963) (citation and quotations omitted).

> Implicit in this right to counsel is the notion of adequate time for counsel to prepare the defense: But the denial of opportunity for counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formality. *Id.*

## VI.    ATTORNEY ROCHA'S ACTUAL CONFLICT

### A.  Chronology of Events

1.  As early as July 29, 2013, the Special Intelligence Unit of the Honduran Police issued a report regarding the causes and participants in the assassination of Julian Aristides Gonzalez.



3.  On August 15, 2015, Rivera Maradiaga admitted during a proffer in this District to participating in the assassination of General Aristides Gonzalez, among other murders.

4.    On April 14, 2016, Rivera Maradiaga pleaded guilty pursuant to a cooperation agreement to, among other offenses, causing 78 murders, including the murder of General Aristides Gonzalez.

5.    On April 15, 2016, the New York Times published an article suggesting that there were case files relating to the murder of General Aristides Gonzalez which referred to additional witness testimony, description of videos, and phone call records.

10

6.  On November 21, 2018, the government filed a motion in limine to offer evidence of the assassination of General Aristides Gonzalez.

7.  On December 8, 2018, the government submitted a letter which devoted six (6) single spaced pages to the anticipated evidence regarding the assassination.

8.  Prior to December 10, 2018, neither the government nor Attorney Rocha had advised the court of Attorney Rocha's representation of Wilter Blanco, ███ ████████████████████████████████ Neither the government nor Mr. Rocha have explained the reasons why this vital information about a potential conflict was only disclosed during the colloquy that preceded the change of plea.

## B. Applicable Law

"An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *United States v. Berger*, 188 F. Supp. 2d 307, 333 (S.D.N.Y. 2002) (quoting *United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000)). "This has been described by the Second Circuit as 'a two-part showing.'" *Medrano v. United States*, No. 13 Civ. 1604, 2015 WL 848551, at *23 (S.D.N.Y. Feb. 27, 2015) (quoting *LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005)). "First, [the defendant] must demonstrate the existence of some plausible alternative defense strategy not taken up by counsel." *LoCascio*, 395 F.3d at 56. "Second, [the defendant] must show 'causation'—*i.e.*,— that the alternative defense was 'inherently in conflict with or not undertaken *due* to the attorney's

11

other loyalties or interests.'" *Id.* (quoting *United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000)).

### C. Discussion

On December 8, 2018, the government submitted a letter which devoted six (6) single spaced pages to the anticipated evidence regarding the assassination. The government claims that: Mr. Najera was the driving force behind the murder "because General Aristides Gonzalez was seizing airstrips on his properties; that he had landed a helicopter on of the defendant's ranches during the investigation"; that Mr. Najera used his position in the Honduran National Congress to access information to facilitate the crime; Mr. Najera wanted the assassination to happen soon because General Gonzalez had planned to seize more of the defendant's properties; and finally that Mr. Najera was present at a meeting where the sum of $300,000 in cash was paid for arranging the murder. [3] (Gov. Opp. 6 6-17).

As early as July 29, 2013, almost five years ago, the Special Intelligence Unit of the Honduran Police issued a report regarding the causes and participants in the

---

[3] While discussing at length the events surrounding General Gonzalez's assassination, (P. 5, L3-20; P 6-1-17; P7 L1-13) the government now states that this incident is not significant because **none of the charges required proof relating to the assassination of General Aristides Gonzalez, and the Court never ruled that testimony related to the assassination was admissible and the court never ruled on the government's motion in limine prior to the entry of defendant's guilty plea**. (Govt. Opp. P 5 l, 3-6). (Emphasis Added).   Not only the incident mentioned at length, but it was part of a press release issued by the Southern District of New York on December 11, 2018.  See https://www.justice.gov/usao-sdny/pr/honduran-congressman-pleads-guilty-conspiring-import-cocaine-united-states-and

12

assassination of Julian Aristides Gonzalez. The following were the conclusions reached:

> "Having seen and analyzed the sworn statements, the videos that were found, and other methods of proof, it is concluded that the individual **Wilter Neptali Blanco Ruiz** and the above mentioned members of the National Police, are presumed responsible for the assassination of General Julian Aristides Gonzalez Irias and that there is sufficient merit to continue with the administrative proceeding and corresponding legal [proceedings] for breach of and grave violation of the obligations and prohibitions establish in the Organic Law of the National Police." (Page 15, Honduran Police Report.)

The contents of this report were publicized by the New York Times on April 20, 2016. At that point the government had a legal obligation to determine if the reports contained exculpatory evidence or evidence impugning Rivera Maradiaga's August 15, 2015 proffer. [4] *Brady v. Maryland*, 373 U.S. 83 (1963); *U. S. v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976); *U.S. v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

The government willfully ignored any exculpatory evidence that was inconsistent with Leonel Maradiaga's version of the events. Brazenly, the government now questions whether the Honduran government would have opened its case files to provide Mr. Najera with evidence from an ongoing investigation to the murder. (Gov. Opp. 51 1-3). <u>Not so</u>. The ones who made no effort to obtain information and access to the Honduran case files involving the investigation

---

[4] See Maradiaga's August 20, 2015 Proffer, infra at 16,17.

relating to this matter are the very **same individuals that are prosecuting this case**. (*Emphasis Added*.)

Without reading the actual report the government claims that the New York Times Article "did not suggest that Blanco was the only drug trafficker responsible for the murder. (Gov. Opp. 37 10-13). Rather, the prosecutors claim that the "chief suspect were a cell of high-ranking police commanders working hand-in-hand with drug traffickers." (*Id.*) This confirms the prosecutor's failure to read the report and their indifference the contents therein. The Technical Investigative Intelligence Report mentions Wilter Blanco—or as he is referred to "Our friend Wilter" and no other drug traffickers. This is supported by a recorded conversation mentioned in the report.

> "After everything was agreed upon at the meeting, General Muñoz Licona said: well, sirs, everything is agreed, we don't want any mistakes, you remain under the command of Sabillon Flores, Cruz Aguilar and Flores Maradiaga, they will coordinate all the operation, remember that **our friend Wilter** wants the head of Julian Aristides quickly, that has to be done before the 8th of next month; you: Moncada, Sobalvarro, Merlo and Najera, we have to find out well about that bilingual school in Hatillo where that guy goes to drop off that kid, and find out well the route he takes up to la Florencia and confirm whether he has security or if he rides alone; also, we have to find out well the vehicles that Aristides takes, so as not to kill another innocent person; all of them respond in unison: Sir, he rides alone, we have already followed him, us and …"

14

## VII.   ATTORNEY ROCHA'S INVESTIGATION AND REVIEW OF THE 3500 MATERIAL

### A.  Discussion

On December 10, 2018, Attorney Rocha stated that based upon his review of the 3500 materials concerning the assassination of General Gonzalez, there was ample evidence of Mr. Najera's involvement.  The following are the statements previously made by Mr. Rivera Maradiaga in connection with the assassination of General Gonzalez: (Dec. 10, 2018 Tr. 20 L 2-5).





These statements do not comport with the government's argument that Mr. Najera was the organizer of an assassination plot to silence and kill General Gonzalez. Nowhere in that initial statement is Mr. Najera mentioned as instigating, promoting, or using his position in the Honduran National Congress to carry out the murder. Nowhere is mentioned that Mr. Najera was present at a meeting and participated in paying the amount of $300,000 for the cost of the assassination. All of Rivera Maradiaga's prior statements make his subsequent statements on the eve of trial suspect - particularly in light of information unearthed by the report generated by the Honduran Police.

## VIII. <u>CONCLUSION</u>

This was not a case where Attorney Rocha made "tactical decisions regarding defense investigation and strategy. (Gov. Opp. 41 7-10) On the contrary, this was a conscious decision to avoid implicating Mr. Blanco in the assassination of General Gonzalez. Likewise, Mr. Rocha failed to acknowledge his prior

16

representation of Mr. Matta. ████████████████████████

████████████████████████████████████████████

████████████████████████████████. All of this highlights the

existence of a possible alternative defense strategy not taken up by counsel as a result

of the conflict. *LoCascio v. United States*, 395 F. 3d 51, 56 (2d Cir. 2005). It also

indicates there was an alternative that was "inherently in conflict with or not

undertaken due to the attorney's other loyalties or interests. *United States v. Moree*,

220 F. 3d 65, 69 (2d Cir. 2000).

## IX.   THE INDIVIDUALS IMPLICATED IN THE ASSASSINATION

The following were the individuals implicated by the Honduran report:



Wilter Nephtaly Blanco Ruiz- He is fully guaranteed that he is the Chief of the "Cartel del Atlantico"

<u>Observations</u> - The Inteligiencia Team presented itself to the offices of the smart city where cameras are monitored, to check the video dated Monday, December 7, 2009. From the cameras that are installed in the offices of Director General Munoz Licona, it was noted in the video that the brother of my General Munoz Licona, entered the office at 7:22 pm on 12/7/2009 in the company of the sub Commissioner Jose E. Ayala Lopez, Sub Commissioner Nelson Smith Hernandez, inspector Nancy Cana Reyes and Class III Constantino Rioberto Gonzalez Martinez, who had a briefcase containing a good amount of dollars inside, according to the video the dollars will be for the payment of the murder of (DLCN) General Julian Aristides Gonzalez, Irrias.



Jose Ventura Flores Maradiaga

Background - According to the files of the National Police, the Deputy Commissioner Jose Ventura Flores Maradiaga directs a gang that is dedicated to the theft of vans with merchandise that comes from Puerto Cortés or San Pedro Sula to Tegucigalpa. They unload the vans at "desvio de los Laureles" by the Peripheral Ring and later in a warehouse.  Observations -Deputy Commissioner Jose Ventua Flores Maradiaga, directed the police deployment in Hatillo Street towards Florencia to assassinate the general Julian Aristides Gonzalez Irias, He was also present in the meeting of December 7 in the office of the General Director of the Police.



Background

According to the investigations General Jose Luis Munoz Licona, Wilter Neptaly Blanco Ruiz and his brother who worked as the right arm, made the enlace between the Wilter Blanco and Munoz Licona, to assassinate General Julian Aristides Gonzales Irias, (DLCN)

According to a video in the hands of the intelligence team on Monday, December 7, 2009, exactly at 7:22 pm, the brother of General Munoz Licona entered his office in the company of Deputy Commissioner Jose Edgardo Ayala Lopez, Sub Commissioner Nelson Smith Hernandez inspects Nancy Yessenia Canas Reyes and Class III Constantino Rioberto Gonzalez, who carried a briefcase containing a good amount of Dollars inside, according to the video the dollars were for the payment for the murder of General Julian Aristides Gonzaalez Irias, after the arrival of these

*Continued on next page .....*

18

officers and the brother of Director Munoz Licona arrive: Chief of Intelligence commissioner Jose Ricardo Ramirez del Cid, Director of the DNIC, General Jose Frnacisco Murillo Lopez, Sub Commissioners Mario Rene Chamorro Gotay, Kenneth Obdulio Sabillon Flores, Marco Tullio Cruz Aguilar, Jose Ventura Flores Maradiaga, Commissioners Edilberto also arrive Brizuela Reyes, Einar Maryino Moncada Martinez, David Leonardo Ortega Pagoaga, Leonel Osmin Merlo Canales, Sub-Commissioners Javier Francisco Leiva Gamoneda, Mario Guillermo Mejia Vargas, and the research inspectors Juan Francisco Sosa and Geovany Fonseca Cabrera, The meeting was led by the General Munoz Licona and they had as purpose to plan the assassination of Julian Aristides Gonzales



Kenneth Obdulio Sabillon Flores

At the moment the investigation team requested the Sub Commissioner Kenneth Obdulio Sabillon Flores, to interview him regarding his participation in the meeting shown in the video, where the assassination of General Julian Aristides Gonzalez and his arrival at the crime scene is planned to ask who was the deceased and the video where he receives a dollar amount in the meeting. Sub-commissioner Sabillon Flores, refused to give statements and threatened the members of the investigation team that would fire them all.

 Observations - in the photos you can see the moment that the dollars were distributed, this is the part that corresponded to the Sub Commissioner Kenneth Obdulio Sabillo Flores and transported the Dollars so that he paid the police hitmen Gerluis Slagado, Francis Aradon and Yederis Salgado for the assassination of General Julian Aristides Gonzalez Irias.



Marco Tulio Cruz Aguilar

The video shows the participation of Deputy Commissioner Marco Tulio Cruz Aguilar, in the meeting where the assassination of (DLCN) General Julian Aristides Gonzalez Irias was planned.

*Continued on next page....*

19

According to witness statements from the Transit Police who were in and service, also arriving at the crime scene in the company Sub-Commissioner Jose Ventura Flores Maradiaga, to confirm whether the deceased was General Julian Aristides Gonzalez Irias.

Evidence indicates that Deputy Commissioner Marco Tulio Cruz Aguilar, Jose Ventura Flores Maradiaga, Kenneth Obdulio Sabillo Flores, Mario Guillermo Mejia Vargas and Javier Francisco Leiva Gamoneda were the ones who made the police deployment on the street from Hatillo to Florencia where the offices of the Director of General Gonzales Irias were located to assassinate him

Observations
Part of the Dollars that belonged to Deputy Commissioner Marco Tulio Cruz Aguilar:

WHEREFORE, Defendant, FREDY RENAN NAJERA MONTOYA, respectfully requests the entry of an order vacating the plea of guilty and scheduling the instant cause for trial.

Respectfully submitted,

/s/ *Joaquin Perez*

_____
JOAQUIN PEREZ, ESQ.
6780 Coral Way
Miami, Florida 33155
Tel: (305) 261-4000
Fax: (305) 662-4067
NY. Bar No.: 5237532
Jplaw1@bellsouth.net

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply to Government's Motion in Opposition to Defendant's Motion to Withdraw his Guilty Plea was filed this 18th day of July, 2019 VIA CM/ECF filing system and to all parties of record via the same system.

/s/ *Joaquin Perez*

_____

Joaquin Perez, Esq.

21