

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 9, 2019

Via ECF
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 705
New York, New York 10007

Re:     **United States v. Fredy Renan Najera Montoya, S1 15 Cr. 378 (PGG)**

Dear Judge Gardephe:

The Government respectfully submits this letter in connection with the defendant's motion to withdraw his guilty plea (the "Withdrawal Motion") and pursuant to the Court's order at the conference held on August 2, 2019.  For the reasons set forth below, the Government continues to oppose the Withdrawal Motion.

## RELEVANT BACKGROUND[1]

The Government—and in particular the undersigned prosecutors—began targeting the defendant in late 2014 as part of a long-term investigation into what was in effect state-sponsored drug trafficking in Honduras.  Through that investigation, which was conducted in partnership with the Special Operations Division of the Drug Enforcement Administration, the Government uncovered compelling evidence that the defendant was the leader of a large scale and violent drug-trafficking organization based in Olancho, Honduras, and that the defendant used his position as a Congressman to facilitate his drug-trafficking activities and protect himself from

---

[1] A detailed background concerning the defendant's motion to withdraw his guilty plea is set forth in the Government's brief, dated June 10, 2019, opposing the Withdrawal Motion.  The Government summarizes certain aspects of that background below that were relevant to its decision to continue to oppose the Withdrawal Motion.

The Honorable Paul G. Gardephe                                                   Page 2
September 9, 2019

detection and arrest.  This evidence was developed largely through the cultivation of cooperating witnesses who were arrested as part of the Government's broader investigation.  As the Government has detailed in prior submissions, many of these witnesses cooperated despite significant risks to themselves and their families.

On January 18, 2018, a grand jury charged the defendant in Superseding Indictment S1 15 Cr. 378 (PGG) (the "Indictment") with drug-trafficking and weapons offenses.  On March 14, 2018, the defendant surrendered voluntarily after retaining Victor Rocha, Esq. to represent him.  Following a failed effort at cooperation, the Court set a trial date of December 10, 2018.

On December 10, 2018, the defendant pled guilty as jury selection was about to begin.  On that day, the Government was fully prepared for trial—preparation that had begun in earnest several months beforehand.  Prior to trial, the Government had, among other things, filed lengthy motions in limine; produced 3500 material for numerous cooperating witnesses and hearsay declarants; and prepared five cooperating witnesses and three expert witnesses to testify.  Together, the evidence would have established that the defendant was responsible for importing at least 20 metric tons of cocaine into the United States and that he engaged in acts of violence, including helping to cause the assassination of General Julian Arístides González.

Nevertheless, on that day, the defendant pled guilty to Counts One and Two of the Indictment.  He entered the plea after two thorough and lengthy proceedings conducted by the Court that confirmed that the defendant had received adequate legal representation, from retained counsel, and made a knowing and voluntary decision to admit guilt to two of the serious charges he faced.  During those proceedings, on December 7 and 10, the Court found that the defendant had made "false" claims regarding Mr. Rocha as part of a "bad-faith attempt" to delay the trial.

Following the defendant's guilty plea, in January 2019, Joaquin Perez, Esq.—an attorney who played a central role in the defendant's efforts to delay the trial dating back to November 2018—filed a notice of appearance.  On April 6, 2019, Mr. Perez filed the Withdrawal Motion, which focused on a potential conflict of interest involving Mr. Rocha's prior representation of Wilter Blanco.  In its opposition brief, the Government made a number of arguments including, among others, that: (i) the motion was untimely, as it was filed almost four months after the guilty plea and approximately six weeks after the Government rebuffed what appeared to be a request from Mr. Perez to discuss potential cooperation by the defendant; (ii) the defendant had not filed a sworn statement indicating that he is innocent and that he would proceed to trial if the motion is granted, both of which are crucial aspects of meritorious applications to withdraw a guilty plea; and (iii) the Government would be prejudiced if the defendant is permitted to withdraw his guilty plea, as it would be required to redo a significant amount of trial preparation.

On July 12, 2019, the defendant filed a supplemental letter in support of the Withdrawal Motion raising another potential conflict of interest involving Mr. Rocha's prior representation of Matta Waldurraga.  On July 22, 2019, the Government filed under seal its response to that letter.  On July 28, 2019, the defendant's counsel filed a letter attaching a "sworn statement" from the defendant in which the defendant stated, among other things, that he

"maintain[s] my innocence of Count Two" and "hope[s] that the Government prove[s] my guilt to [the] drug trafficking charges in Count One."  (Dkt. 112-2, at 2).

On August 2, 2019, the Court held a conference during which it described the parties' submissions in connection with the Withdrawal Motion and, in particular, the two potential conflicts of interest involving the defendant's prior counsel.  The Court explained that in order to fully explore those potential conflicts, the Court would need to hold hearings at which Mr. Rocha and potentially the defendant would testify.  Moreover, after those hearings, the Court noted that, even if the defendant were not permitted to withdraw his guilty plea, the Court would likely need to hold a lengthy *Fatico* hearing prior to sentencing.  As a result, the Court directed the parties to consider how best to proceed.  In that regard, the Court directed the defendant to inform the Court whether or not he was also asserting his actual innocence on Count One, as well as Count Two.  After that notification, the Court directed the Government to file a letter stating whether it continued to oppose the Withdrawal Motion.

On August 26, 2019, Mr. Perez filed a letter asserting the defendant's actual innocence as to Count One and demanding a jury trial.  (Dkt. 119).

## DISCUSSION

The Government firmly believes that the defendant pled guilty knowingly and voluntarily after consulting with constitutionally effective, retained counsel, and that his efforts throughout this case to delay trial and withdraw his guilty plea were undertaken in bad faith in an effort to re-secure a favorable plea offer from the Government that he rejected long before trial was scheduled to begin.  Indeed, the defendant's recent assertion of innocence on Count One and demand for a jury trial is belied by the facts that (i) the defendant waited to assert his innocence until over eight months after his guilty plea and over four months after filing the Withdrawal Motion; (ii) the defendant asserted his innocence through his attorney rather than through a sworn affidavit; (iii) several weeks ago on August 13, 2019, the defendant's counsel emailed the Government asking if the "Government would agree to dismiss Count 2 and 3 in exchange for Mr. Najera re-entering a plea to Count 1 of the Indictment"; (iv) the defendant stated in Court on December 10, 2018, that "I don't want or wish to go to trial, as I have been saying since the first day I arrived to the United States" (Dec. 10, 2018 Tr. 2); and (v) the defendant plainly and unequivocally admitted his guilt as to Count One during proffer sessions in March and May 2018.  Those proffer statements are now admissible against him for all purposes, including in connection with the Withdrawal Motion, in light of his blatant lie regarding his innocence on August 26, 2019, and they further underscore the bad faith elements of at least some aspects of the Withdrawal Motion.

The Government would also be substantially prejudiced if the defendant were permitted to withdraw his guilty plea.  As the Government detailed in its opposition to the Withdrawal Motion, permitting withdrawal would be prejudicial because it would (i) require the Government to redo much of its trial preparation; (ii) have the perverse effect of giving the defendant almost a year (and perhaps longer) to prepare a defense based on early access to all of

the Government's evidence and trial strategies, including 3500 material that the defendant has now possessed since approximately December 2018; and (iii) provide the defendant and/or his associates in Honduras with substantial additional time and opportunity to intimidate, threaten, and/or harm witnesses' families. Moreover, the Government can now confirm that CW-3, a former member of the Honduran National Police and key Government witness, has been expelled from the United States and is no longer available as a witness. CW-3 was a critical witness in this prosecution, and it is unlikely the Government will be able to replace the substance of his testimony.

Furthermore, the Government would also be prejudiced because the undersigned prosecutors—who have been solely responsible for investigating this case since 2014—would likely be unable to participate in a rescheduled trial if it were to occur prior to October 2020. Mr. Bove and Mr. Laroche are both preparing for complicated trials in the coming months. *United States v. Hernandez*, 15 Cr. 379 (PKC) (Bove) (approximately two-week long trial set for October 2, 2019 against Juan Antonio Hernandez, the brother of the current President of Honduras, who is charged with drug-trafficking and weapons offenses); *United States v. Schulte*, No. 17 Cr. 548 (PAC) (Laroche) (approximately month-long trial set for January 13, 2020 against Joshua Adam Schulte, who is charged with, among other things, stealing classified national defense information from the Central Intelligence Agency and transmitting that information to WikiLeaks.org). The undersigned are also co-counsel in a death-penalty case in which trial is set for April 2020 and expected to last several months. *United States v. Saipov*, 17 Cr. 722 (VSB) (defendant charged with the October 31, 2017 truck attack in Tribeca that killed eight and injured dozens more). While the Government recognizes that other prosecutors could be assigned to this case, continuity of Government counsel is a meaningful and unique consideration given that the undersigned have spent years working with the DEA on the investigation, are intimately familiar with the evidence, co-conspirators, and witnesses, and were fully prepared to proceed to trial on December 10, 2018.

In light of the foregoing, the Government continues to oppose the Withdrawal Motion. The Government has made this determination having carefully and thoroughly considered the Court's guidance at the August 2 conference, and the Government is mindful that opposing the motion may require a hearing at which testimony is taken from Mr. Rocha and, potentially, the defendant. As an intermediary step, the Government proposes that the Court issue an order directing the defendant to waive the attorney-client privilege with respect to Mr. Rocha. Once the privilege is waived, Mr. Rocha should be ordered to submit an affidavit in which he describes (i) the scope and length of his representation of Matta, and (ii) discussions with Najera concerning Blanco and Matta. After the affidavit is filed, the parties can provide additional briefing to the Court concerning the Withdrawal Motion, including the scope of a hearing should one be required. Indeed, the Government respectfully submits that Mr. Rocha's affidavit may obviate the need for a hearing given the conclusory nature of the defendant's July 28 "sworn statement" and the fact

The Honorable Paul G. Gardephe                                                           Page 5
September 9, 2019

that the defendant still has not submitted an affidavit (as opposed to the short August 26 letter from his attorney) claiming actual innocence as to Count One.[2]

                                                   Respectfully submitted,

                                                   GEOFFREY S. BERMAN
                                                   United States Attorney

By:  /s/ _____
         Emil J. Bove III
         Matthew J. Laroche
         Assistant United States Attorneys
         (212) 637-2420

Cc:    Defense Counsel (Via ECF)

---

[2] If the Withdrawal Motion is denied, the Government is also prepared to work with defense counsel to limit the factual disputes at sentencing, which may also obviate the need for a *Fatico* hearing or substantially limit such a hearing's scope.