

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 4, 2020

Via ECF
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Fredy Renan Najera Montoya, S1 15 Cr. 378 (PGG)

Dear Judge Gardephe:

      We write in response to the defendant's November 2, 2020 request that the Court issue an order concerning the Government's disclosure obligations. (Dkt. 151, at 1). The defendant's November 2, 2020 request attaches a September 29, 2020 email from defense counsel to the Government in which counsel makes a number of claims related to the defendant's participation in General Julian Arístides González's murder and a prison interaction between the defendant and one of the Government's cooperating witnesses.[1] As defense counsel is aware, the Government produced materials responsive to those matters almost two years ago in November 2018. The Government has not identified any undisclosed materials that relate to either of those matters, and writes further below to explain why defense counsel's claims are factually inaccurate, without merit, and in one instance appear to breach the defendant's plea agreement. Moreover, on October 30, 2020, the Court issued an order pursuant to Federal Rule of Criminal Procedure 5(f) to remind the Government of its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and to summarize the potential consequences of violating those obligations. (Dkt. 150). The Court's October 30, 2020 order moots the defendant's request, as the Court already found earlier today. (Dkt. 152).

## THE DEFENDANT'S PARTICIPATION IN GENERAL GONZÁLEZ'S MURDER

      With respect to General Arístides González's murder, defense counsel claims that the Government (i) did not identify information supporting its claims about the defendant's participation in the murder or "vet the accuracy" of the anticipated testimony of cooperating witness Devis Leonel Rivera Maradiaga; (ii) did not "properly disclose[]" that Wilter Blanco also participated in the murder of another individual, which was addressed at the October 2019 trial of

---

[1] Defense counsel omitted other parts of his email correspondence with the Government. The Government is attaching the complete correspondence as Exhibit A to this letter. The Government respectfully submits Exhibit A under seal out of an abundance of caution because it includes defense counsel's objections to the Presentence Investigation Report.

Juan Antonio Hernandez Alvarado, No. 15 Cr. 379 (PKC); and (iii) has not explained how it responded to a 2016 New York Times report implicating Blanco in General Arístides González's murder. These claims are without merit.

*First*, the Government produced substantial materials in compliance with its disclosure obligations concerning the defendant's participation in the general's murder. In advance of trial, the Government filed two briefs describing the anticipated evidence against the defendant with respect to that murder. (Dkt. 61 (Government's motions *in limine*); Dkt. 79 (Government's Supplemental Letter Brief regarding General González's murder)). As detailed in those submissions, the Government expected to prove that (i) General Arístides González began investigating the defendant and other drug traffickers in Honduras in 2009 following a cocaine shipment to Olancho, Honduras that drew law enforcement attention; (ii) in retaliation, Sergio Neftali Mejia Duarte, on behalf of the defendant, contacted other drug traffickers, including Rivera Maradiaga, and requested that they assist in killing General Arístides González in order to stop the investigation and other similar investigations; (iii) Rivera Maradiaga, in turn, recruited members of the Honduran National Police to carry out the murder; (iv) following the murder, the defendant and Mejia Duarte provided Rivera Maradiaga with between approximately $250,000 and $300,000 in cash to pay the assassins who carried out the murder and during a meeting where that money was present, the defendant congratulated Rivera Maradiaga for successfully coordinating General Arístides González's murder; and (v) the defendant acknowledged to another cooperating witness that the murder cost hundreds of thousands of dollars.

The defendant is simply wrong that the Government relied solely on Rivera Maradiaga in making those claims. Rather, in its pretrial submissions, the Government detailed the anticipated testimony of two other cooperating witnesses who implicated the defendant in the murder and corroborated Rivera Maradiaga. (*See generally* Dkt. 79). With respect to each of those witnesses, in November 2018, the Government produced all of their 3500 material, including all statements made by them concerning the general's murder (or any other topic). The Government also produced all of the 3500 material for other non-testifying cooperating witnesses who were implicated in General Arístides González's murder. The Government did not withhold any information provided by those witnesses (whether related to General Arístides González's murder or otherwise), as suggested by defense counsel in his November 2, 2020 filing. (Dkt. 151, at 1 (seeking an order requiring the Government to reassess "any undisclosed evidence" related to General González)). Thus, since at least November 2018, the defendant was fully aware of the Government's evidence against the defendant with respect to the general's murder, including how other cooperating witnesses corroborated the testimony of Rivera Maradiaga.

*Second*, the defendant is wrong that the Government did not disclose, prior to trial, Blanco's participation in another murder or his alleged propensity for violence. As an initial matter, Blanco's participation in other acts of violence in no way undermines the Government's evidence that both Blanco and the defendant were among those who coordinated General Arístides González's murder, and defense counsel does not explain why it should. Regardless, Rivera Maradiaga's and another cooperating witness's 3500 material, which, again, was produced to the defendant in November 2018, both contain multiple references to Blanco's participation in acts of violence, including his role in the murder of "El Chino" and in the murder of other rivals. It is true, as defense counsel notes, that another cooperating witness, Alexander Amilcar Ardon Soriano, also testified at Hernandez Alvarado's October 2019 trial about Blanco's role in El

Chino's murder.  However, Ardon Soriano did not begin proffering with the Government until early 2019, months after the defendant's scheduled trial and, thus, the Government was not aware of this information at the time of the defendant's anticipated trial.  In any event, Ardon Soriano's information and testimony was consistent with information provided by Rivera Maradiaga about Blanco's role in El Chino's murder, which, again, has no connection to the general's murder.

*Third*, defense counsel is wrong that the Government has a disclosure obligation with respect to how it addressed a New York Times article reporting the participation of Blanco in General Arístides González's murder.  "[T]he government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and . . . the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged." *United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000) (citing cases).  Putting that authority aside, defense counsel's claims with respect to the New York Times report are not new ones, and the Government has responded to them in the past.  (*See, e.g.*, Dkt. 94 (defense motion to withdraw guilty plea, addressing the general's murder); Dkt. 98 (Government memorandum addressing the New York Times report and the general's murder)).  The New York Times report was consistent with the anticipated trial testimony of the Government's three cooperating witnesses referenced above—namely, that a group of powerful drug traffickers, including the defendant, Blanco, and others conspired together to pay hundreds of thousands of dollars to assassinate General Arístides González.  Indeed, the article did not suggest that Blanco was the only drug trafficker responsible for the murder.  Rather, the authors noted that the "chief suspects" of Honduran law enforcement "were a cell of high-ranking commanders working hand-in-hand with drug traffickers."  (Dkt. 98, Ex. B).  This statement is consistent with the 3500 material of all the cooperating witnesses referenced above, including the March 2017 testimony of Rivera Maradiaga at a sentencing hearing in which he stated that the defendant, Blanco, and a number of other drug traffickers were responsible for the general's murder.  (Dkt. 98, Ex. C, at Tr. 18; *see also United States v. Lobo*, No. 15 Cr. 174 (LGS), Dkt. 211, at 3-5 (order concluding that Rivera Maradiaga was "credible in light of the entirety of the record and observations of his tone, demeanor and straightforward answers")).

*Finally*, the Government will continue to provide the defendant with discoverable materials related to General Arístides González's murder to the extent any such materials are identified.  As the Government has made clear to the defendant, however, the Government is not relying on the defendant's participation in General Arístides González's murder at sentencing, which makes the defendant's November 2 request even more of a red herring.  The Government chose not to proceed with respect to this murder at sentencing because doing so would have required a lengthy *Fatico* hearing in a case in which sentencing proceedings have been repeatedly delayed and in which the defendant has already admitted to (i) distributing at least 20,000 kilograms of cocaine; (ii)  possessing firearms, including rocket-propelled grenade launchers and grenades, as part of his drug-trafficking activities; (iii) using violence in connection with his drug-trafficking activities; (iv) bribing law enforcement officers to facilitate his drug-trafficking activities; (v) committing his drug-trafficking activities as part of a pattern of criminal conduct engaged in as a livelihood; (vi) being an organizer or leader of his criminal activities; (vii) abusing his position as a Honduran congressman to commit his crimes; and (viii) lying to the Court on multiple occasions and obstructing justice.  (*See, e.g.*, Plea Agreement, at 3-5 (stipulating to 11 Guidelines sentencing enhancements)).  Given the defendant's extensive and in some ways

unprecedented record of criminality, the Government believes that proceeding to sentencing on the current, undisputed record is in the interest of justice.

## THE DEFENDANT'S PRISON STATEMENTS

Defense counsel requests information concerning an interaction in prison between the defendant and Rivera Maradiaga, which the defendant contends is relevant to whether the defendant obstructed justice. The defendant agreed in his plea agreement that he lied about his prison interaction with Rivera Maradiaga in a letter to the Court and obstructed justice by doing so. Thus, defense counsel's arguments to the contrary would constitute a breach of his plea agreement. (Plea Agreement, at 5 (stipulating that the defendant willfully attempted to obstruct justice by (i) making false statements regarding Rivera Maradiaga in an October 2, 2019 letter to the Court; (ii) making false statements in a sworn statement filed with the Court on July 28, 2019; and (iii) causing defense counsel to file an August 2, 2019 letter falsely claiming actual innocence with respect to Count One of the Indictment)). Regardless, as noted, in November 2018, the Government produced all of Rivera Maradiaga's statements concerning his interaction with the defendant. With respect to the prison separation of the defendant and Rivera Maradiaga, on March 14, 2018, the day the defendant arrived in the United States, the Government requested that the Bureau of Prisons institute a separation order between the defendant and Rivera Maradiaga, among others. When the Government learned that the defendant came into contact with Rivera Maradiaga in prison, the Government immediately contacted the Bureau of Prisons to ensure that that order was enforced. Defense counsel's suggestion that the Government had "some expectation" that Rivera Maradiaga would obtain information from the defendant in prison is baseless. (Dkt. 151, Ex. A, at 3).

\* \* \*

In light of the foregoing, and based on the Court's October 30, 2020 order pursuant to Rule 5(f), the Government respectfully submits that no action is required in response to the defendant's November 2, 2020 request.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: /s/
Emil J. Bove III
Matthew Laroche
Jason Richman
Assistant United States Attorneys
(212) 637-2444 / 2420 / 2589

Cc: Defense Counsel (Via ECF and Email)