

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

October 12, 2021

Via ECF
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>United States</u> v. <u>Fredy Renan Najera Montoya</u>, S1 15 Cr. 378 (PGG)

Dear Judge Gardephe:

      The Government writes in response to defense counsel's second baseless claim of misconduct in connection with sentencing (Dkt. 175), which he filed on October 6, 2021 and relates to paragraph 79 of the September 15, 2021 Final Revised Presentence Investigation Report (the "PSR") (Dkt. 170). The defendant continues to attempt to distract from years of corruption and violent cocaine trafficking by lobbing false allegations at the Government concerning facts contained in the PSR. For the reasons to follow, the defendant's allegations are belied by the record and find no legal support, and the Court should reject them and proceed to sentencing.

**I.    Background**

      In August 2018, the defendant's prior counsel filed a motion to conduct Rule 15 depositions related to, among other things, the October 11, 2012 murder of Claudio Rigoberto Méndez in Honduras. (Dkt. 20). In an August 27, 2018 opposition to the motion, the Government provided factual context for Méndez's murder from cooperating witness Devis Leonel Rivera Maradiaga:

> Rivera Maradiaga has acknowledged that, prior to the murder of Méndez, he participated in efforts have the defendant killed and caused the murders of four of the defendant's bodyguards. In approximately October 2012, (i) Rivera Maradiaga was informed by a relative ("Relative-1") that the defendant and others were seeking to kill Relative-1, (ii) Rivera Maradiaga directed an associate to hire an assassin to assist Relative-1 in retaliating against the defendant, (iii) Rivera Maradiaga was told that the hired assassin led an attack against the defendant that resulted in the defendant being wounded, (iv) Rivera Maradiaga was later told that the defendant and others caused an attack against Relative-1

The Honorable Paul G. Gardephe                                                                               Page 2
October 12, 2021

>   and his associates, which led to the murder of Méndez and others, and (v) in connection with a truce involving the defendant and other drug traffickers, Rivera Maradiaga persuaded Relative-1 not to testify or provide evidence against the defendant relating to these incidents.

(Dkt. 23 at 5).  The Government also noted in its opposition to the defendant's Rule 15 motion: "[*U*]*nless new evidence is identified*, the Government does not intend to argue at any point in these proceedings, including at any sentencing of the defendant should he be convicted, that the defendant was present at the scene where Méndez was murdered."  (Dkt. 23 at 16 (emphasis added)).

On September 19, 2018, the Government disclosed to the Court and counsel that it had identified new evidence, in the form of "recently obtained written judicial opinions relating to the charges under Honduran law that are pending against the defendant relating to the murder" of Méndez.  (Dkt. 38 at 20).  The Government noted that the Honduran Supreme Court had "ordered a new trial conducted by different judges" and attached translations of the relevant opinions to the submission filed on ECF.  (*Id.* at 23; *see also* Dkts. 38-1, 38-2, 38-3).  The Government also pointed to the Honduran Supreme Court's reasoning that "[witness] statements unquestionably attest beyond all reasonable doubt that the defendant FREDY RENAN NAJERA MONTOYA participated willfully, along with other persons" in Méndez's murder.  (Dkt. 38-3 at 24; Ex. A).

On February 19, 2020, following extensive pretrial litigation, the defendant pled guilty to the drug-trafficking crime charged in Count One, a lesser-included firearms offense of Count Two, and the firearms conspiracy charged in Count Three.  On July 29, 2020, the Probation Office filed a "Final PSR" on ECF.  (Dkt. 145).  The following day, in response to the Government's objection that the PSR omitted material aspects of the defendant's conduct, the Probation Office filed a Revised Final PSR.  (Dkt. 146).  More than three months later, on November 23, 2020, counsel filed objections related to the Final PSR.  (Dkt. 155).  He argued, among other things, that the defendant had been found "not guilty" in Honduras of Méndez's murder, "but the Honduran Supreme Court reinstated the criminal case . . . ."  (Dkt. 155 at 13).  Although the Probation Office filed the Revised Final PSR on ECF, counsel did not address it in his November 23, 2020 submission and later claimed to have been "unaware" of it.  (Dkt. 159).  In a separate filing on November 23, 2020, counsel accused the Government of "prior misrepresentations" and a "Brady violation" relating to the defendant's role in the assassination of General Julian Arístides González.  (Dkt. 154).  The Court granted counsel's request for additional time to submit objections to the Revised Final PSR.  (*E.g.*, Dkt. 167).  The Government refuted counsel's González-related misconduct claims in its December 23, 2020 sentencing submission.  (Dkt. 156 at 32-35).

On June 1, 2021, counsel filed a sentencing submission in which he lodged objections to the Revised Final PSR, and argued that the Government had "tak[en] out of context and misrepresent[ed] the Honduran Supreme Court's holding."  (*Id.* at 8).  On July 9, 2021, the Court instructed the Probation Office to prepare a revised PSR addressing the defendant's objections.  (Dkt. 167).  At 10:34 a.m. on September 15, 2021, the Probation Office contacted the Government via email soliciting "comment" on counsel's objections to the PSR.  (Ex. B).  The Government did

The Honorable Paul G. Gardephe  Page 3
October 12, 2021

not respond prior to 4:04 p.m. that day, when the Probation Office filed a Revised Final PSR on ECF. (Dkt. No. 170). In paragraph 79, the current version of the PSR quotes the Honduran Supreme Court and states in full:

> On March 31, 2016, the Honduran Supreme Court reversed the acquittal of the trial court, and ordered a new trial conducted by different judges. The Supreme Court "fully agree[d] with what is recorded in the entire dissenting vote," and held that the evidence "unquestionably attest[s] beyond all reasonable doubt that [the defendant] participated willfully, along with other persons, in the events" of October 11, 2012 that resulted in the murder of Méndez. Defense counsel contends that the Court never made a finding that NÁJERA was convicted beyond a reasonable doubt in the murder of Méndez. Instead, the Court found there were questions about whether NÁJERA was present in the immediate area where the murder was committed and remanded the case to the lower tribunal for further proceeding.

On October 6, 2021, the defendant filed a "Request for Sanctions for Brady Violations" (Dkt. 175) and a purported expert opinion from an attorney who represented the defendant in Honduras (Dkt. 176).

## II. Discussion

The Court should deny counsel's motion.

First, paragraph 79 of the PSR is accurate and not misleading. The paragraph states that the Honduran Supreme Court "ordered a new trial conducted by different judges," quotes part of the Honduran Supreme Court's ruling, and incorporates counsel's arguments. The PSR does not state or suggest, as counsel asserts, that the defendant "was convicted by the Honduran Supreme Court . . . ." (Dkt. 175).

Second, for years, the Government has been forthright in its disclosures to the Probation Office and the Court that the defendant was not convicted of Méndez's murder. (*See* Dkt. 23 at 4-5 (Aug. 27, 2018, Government Opposition to defendant's Rule 15 deposition request, noting that "[f]ollowing a trial in Honduras, the defendant was not convicted" of the murder and a "retrial in Honduras has not yet taken place[.]"); Dkt. 38 at 23 (Sept. 19, 2018, Government Opposition to defendant's pretrial motions, noting again that "[o]n March 31, 2016, the Honduran Supreme Court reversed the acquittal of the trial court, and ordered a new trial conducted by different judges."); Dkt. 156 at 41-42 (Dec. 23, 2020, Government sentencing submission, quoting language from the Honduran Supreme Court about the defendant's involvement in the murder, but nowhere alleging that he was convicted for the same)).

Third, because paragraph 79 of the July 30, 2020 Revised Final PSR was accurate, the Government was under no obligation to acquiesce in counsel's objection to the language adopted by the Probation Office. Moreover, in a case that has taken years to litigate, the lack of a response from the Government in the period of less than six hours between Probation's email inquiry and

The Honorable Paul G. Gardephe                                                                                                          Page 4
October 12, 2021

Probation's filing of the Final Revised PSR on September 15, 2021 is in no way indicative of unethical behavior by prosecutors.

      Fourth, the Government's decision to offer evidence related to Méndez's murder at sentencing is consistent with its August 2018 position during the Rule 15 litigation.  (*See* Dkt. 23 at 16).  In September 2018, the Government submitted copies of the Honduran Supreme Court's decision reversing the defendant's acquittal and ordering a new trial.  (*See* Dkt. at 1 (referring to "court documents recently obtained from Honduras"); *id.* at 20).  The Honduran court documents, including the Honduran Supreme Court's striking finding regarding the strength of the prosecutors' trial presentation against the defendant, were the type of "new evidence" contemplated by the language the defendant cites from the Government's August 2018 filing.  (Dkt. 23 at 16).

      Finally, as argued in the Government's sentencing submission, the Court should rely on the findings of the Honduran Supreme Court as evidence sufficient to establish by a preponderance that the defendant participated in Méndez's murder.  (*See* Dkt. 156 at 41 n.16).  The opinion of the defendant's "expert," Luis Adolfo Cruz Rivera, does not suggest otherwise.  Cruz Rivera appears to have represented the defendant at trial in Honduras.  (Dkt. 38-1 at 55 (noting that Cruz Rivera acted as the defendant's trial counsel); Dkt. 38-2 at 98 (describing questioning by Cruz Rivera at trial)).  Cruz Rivera's relationship with the defendant receives only an oblique reference in the submission, and he claims that "THERE IS NOT ANY ECONOMIC COMPENSATION OF ANY KIND" associated with the filing.  (Dkt. 176-1 ¶ 11).  Regardless, Cruz Rivera's opinion that there is "[n]o final judgment" against the defendant in Honduras is consistent with paragraph 79 of the PSR.  (Dkt. 176 ¶ 5(a)).  And his opinion that the defendant "is presumed innocent" in Honduras does not preclude this Court from considering evidence related to Méndez's murder in connection with sentencing.  (*Id.* ¶ 5(b)).  "[I]t is well established that a district court's consideration of uncharged conduct as the basis for a sentence enhancement does not deny a defendant the presumption of innocence." *United States v. Swartz*, 758 F. App'x 108, 111 (2d Cir. 2018) (citing *United States v. Martinez*, 525 F.3d 211, 215 (2d Cir. 2008)); *see also United States v. Saglimbeni*, 2021 WL 4204942, at *3 (2d Cir. Sept. 16, 2021) ("It is well settled that a district court may take into consideration a broad array of information in determining the appropriate sentence, including even acquitted conduct.").  In this instance, the highest court in Honduras found that witness statements offered by Honduran prosecutors at the defendant's trial "unquestionably attest beyond all reasonable doubt that the defendant . . . participated willfully, along with other persons," in Méndez's murder.  (Dkt. 38-3 at 24).  The degree of certainty articulated by the Honduran appellate court, notwithstanding the procedural posture of the case, reflects a level of reliability that the Court should credit in connection with the defendant's sentencing.  *See United States v. Concepcion*, 983 F.2d 369, 387-88 (2d Cir. 1992) ("[I]nformation from other proceedings may be relied upon at sentencing so long as the defendant ha[s] an opportunity to respond in order that the court not rely on misinformation." (internal quotation marks omitted)); *see also United States v.*

The Honorable Paul G. Gardephe                                                                                        Page 5
October 12, 2021

*Cruz*, 586 F. App'x 36, 38 (2d Cir. 2014) ("[A] district court may rely on any source, including reliable hearsay evidence and out-of-court declarations, so long as it has 'sufficient indicia of reliability to support its probable accuracy.'" (quoting U.S.S.G. § 6A1.3 & cmt.)).

                                                Respectfully submitted,

                                                DAMIAN WILLIAMS
                                                United States Attorney

                            By:       /s/
                                                Jason A. Richman
                                                Assistant United States Attorney
                                                (212) 637-2589

Cc:    Defense Counsel (Via ECF)