*Law Office Of*
**Joaquin Perez**
6780 Coral Way • Miami, Florida  33155
Phone (305) 261-4000 • Fax (305) 662-4067
*Jplaw1@bellsouth.net*
(Also admitted in Florida, Massachusetts and Rhode Island)

**<u>Via ECF</u>**

The Honorable Paul G. Gardephe
United States District Court Judge
Southern District of New York
New York, New York 10007

      Re:    *United States v. Fredy Renan Najera Montoya*
               **15-cr-378 (PGG-1)**

Dear Judge Gardephe:

      The Defendant provides the foregoing summary of the evidence for the Court's consideration in anticipation of the *Fatico* hearing scheduled for Tuesday, April 12, 2022.

      For the reasons indicated in Mr. Najera's April 8, 2022 submission that Mr. Mendez's murder should not be considered, given any weight and stricken from the PSR, in both the section on relevant conduct and criminal history.  As such, Mr. Najera respectfully request that the Court order the US Probation Officer to prepare an amended PSR so that the stain of this alleged episode will not impact his BOP classification and designation status.

      Regarding the issues outlined in the Government's April 8, 2022 submission, Mr. Najera anticipates that the Government will call a witness referred to as MM to testify regarding the following matters: (1) Mr. Najera's purported ownership or control of the Catacamas Airstrip; (2) Mr. Najera's alleged request for $300,000 to fix his own reelection bid; and (3) Mr. Najera's alleged request for $1M from the Sinaloa Cartel to finance Yani Rosenthal's Presidential Campaign.

      A.  Government Witness MM

      By email dated April 8, 2022, Mr. Najera requested that the Government provide *Giglio* related information about benefits conferred on Government Witness MM.  Even though the Government initially interviewed MM on December 10, 2021, the government failed to provide any documentation regarding the following: the initial plea/cooperation agreement; the judgment and commitment order reflecting the sentence that was initially given; the subsequent application for a Rule 35 (which apparently reduced his sentence to 75 months); any paper work submitted in support of his S-Visa Application/Deferred Action; and any sworn testimony or statement MM has adopted in the past.  Moreover, the Government has not submitted a NCIC report regarding what appears to be a prior arrest for transporting drugs that may have resulted in his removal from the United States.  Finally, the Government has not provided any information regarding MM's use of false identifications to avoid Honduran and Mexican police detection.

      MM's testimony serves as the basis for the claim that Mr. Najera owned and controlled the Catacamas airstrip, the rigging of Mr. Najera's own reelection bid, and his alleged participation in the Sinaloa Cartel's funneling of $1M for Yani Rosenthal's 2012 presidential campaign.

### B. Sinaloa Contribution to Yani Rosenthal's Presidential Campaign

With respect to the Sinaloa contribution, this Court should take notice that neither Yani Rosenthal nor his brother, Yankel Rosenthal's proffer notes mentioned receiving money from Mr. Najera nor the Sinaloa Cartel during his presidential campaign.  Instead, Yani Rosenthal acknowledged receiving money from the Cachiros, including the use of helicopters to facilitate Yani Rosenthal's transportation during his campaign. *See*, *United States v. Rosenthal*, 13-cr-413-JGK (SDNY).  Equally noteworthy, Yani Rosenthal, the beneficiary of this alleged contribution from the Sinaloa Cartel received a sentence of 36 months imprisonment (Id., Dkt. 265 and 281) and his brother Yankel Rosenthal received a sentence of 29 months (Dkt. 294).  Applying sound reasoning, the government would have been negligent not to mention this alleged contribution from the Sinaloa Cartel at their sentencing.  Simply stated, MM is fabricating his testimony against Mr. Najera as otherwise MM's testimony would have been used against Yani Rosenthal, a far more significant player who upon his release became a presidential candidate for the Liberal Party receiving fifteen percent (15 %) of the votes cast in the 2021 Honduran Presidential Election.

### C. Request to Fix Re-Election Campaign

Based upon MM's testimony, the government contends that Mr. Najera requested from MM $300K to fix Mr. Najera's re-election.  This testimony is false, as previously indicated in Mr. Najera's June 1, 2021 submission (Dkt. 164).  During the 2012 Liberal Party primaries, Mr. Najera led the election by at least five thousand votes.  *Id*. at 12.  More telling, however, is why a prolific drug trafficker (as the government contends) would need to borrow $300K to fix his *own* re-election campaign for a seat that he had held since 2006.  Again, it is difficult to fathom why the government would seek to include this baseless allegation of election rigging in the PSR.  *Id*. at 11.

### D. Purported Ownership and Control of the Catacamas Airstrip

Mindful of the fact that the Catacamas airstrip was built by the United States during the Contra War (PSR ¶ 51), during the course of the last two weeks, the government has rewritten its position.  Initially, the government's claim was that the Catacamas airstrip was owned and controlled by Mr. Najera.  The Government now acknowledges that Mr. Najera did neither, and, instead, constructed *other* airstrips within the Department of Olancho near the town of San Esteban, which is located 67 miles from the Catacamas airport, with an estimated drive time of 2 ½ hours. (Olancho is roughly the size of Vermont, *see* PSR ¶ 35)

### E. Mr. Najera's self-surrender and debriefings

Much like MM, Mr. Najera self-surrendered even though he could have used the pendency of the criminal proceedings in the Mendez trial as a pretext to remain in Honduras.  Just like MM, Mr. Najera gave two lengthy debriefings where he admitted responsibility for his drug trafficking activities.  The undersigned recently requested and received the proffer notes of the meetings that were held on March 20, 2018 and May 24, 2018.  The proffer notes received were not Bates stamped or submitted as part of the discovery even though they contain Mr. Najera's statements to law enforcement.  The Government believes that they may have been provided to prior counsel on November 12, 2018. Depending upon the outcome of the government's search, Mr. Najera may seek redress for what is believed to be a discovery violation by way of supplemental submission.  The proffer notes are relevant as they show Mr. Najera's early acceptance of responsibility and willingness to cooperate with the government, factors which are relevant to his personal

characteristics under 18 U.S.C. § 3553(a) and should be considered as a mitigating factor in imposing sentence.

                                        Respectfully submitted,

                                        /s/ Joaquin Perez            /
                                        JOAQUIN PEREZ, ESQ.
                                        NYB: 52376532

cc:      Elinor Tarlow (AUSA)
          Jacob Gutwillig (AUSA)
          Jason Richman (AUSA)